THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
MORRIS PASCAL, PLAINTIFF IN ERROR.

Submitted October 2, 1945—Decided January 7, 1946.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
OLIPHANT.

For the defendant in error, *Lewis P. Scott,* Prosecutor of
the Pleas of Atlantic County, and *David R. Brone,* First
Assistant Prosecutor of the Pleas.

For the plaintiff in error, *Elias G. Naame* and *Irving I.
Jacobs.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff in error was sentenced to imprisonment in the state penitentiary for a minimum of fifteen months and a maximum of two years for a violation of the conditions that attached to his probation. The antecedent events were these: On June 8th, 1943, the plaintiff in error entered in the Atlantic County Court of Quarter Sessions a plea of *non-vult* to an indictment charging that he maintained a disorderly house for gambling purposes. Common Pleas Judge Loveland, then presiding, imposed sentence of one to two years in state's prison but suspended the sentence and placed the defendant, Pascal, on probation for three years and imposed a fine of $200 to be paid in installments to the probation officer of that county. On April 3d, 1945, the plaintiff in error was arrested by the chief probation officer of Atlantic County "for violation of probation" and two days later was served with a notice in letter form, signed by the probation officer, that he would be given a summary hearing on April 9th, 1945. The state produced evidence in proof of the charge that the conditions of probation had been violated by Pascal and he on his part did not take the stand.

We are asked to reverse the judgment under review because it is said that the trial court erred in denying the motion to dismiss the proceeding. The first motion to dismiss was urged at the time of the arraignment and before plea. The reason advanced was that the state failed to supply the defendant with information sufficient to inform him of the nature and character of the charges against him. The law which is pertinent to the matter under consideration is found in the statute, *R. S.* 2:199–4. It provides as follows:

"* * * . At any time during the probation period the court may issue a warrant and cause the probationer to be arrested for violating any of the conditions of his probation, or any probation officer, police officer, or other officer with power of arrest, upon the request of the chief probation officer, may arrest the probationer without a warrant; and a commitment by such probation officer setting forth that the pro-

bationer has, in his judgment, violated the conditions of his probation shall be sufficient warrant for the detention of such probationer in the county jail, house of detention or local prison, when designated in the commitment, until he can be brought before the court. Such probation officer shall forthwith report such arrest or detention to the court and submit to the court a report showing the manner in which the probationer has violated his probation. Thereupon the court, after summary hearing, may continue or it may revoke the probation and the suspension of sentence, and may cause the sentence imposed to be executed or impose any sentence which might originally have been imposed."

The record shows that in the instant case the probation officer, on April 5th, 1945, in writing, advised Pascal that on April 9th, he would be charged with violation of probation; he was further advised of the prison sentence of "one to two years" which had been suspended and that he had been placed on probation for the ensuing three years and that his probationary period was still incomplete; that the probation officer had been informed that Pascal had violated his probation in that he became "involved in gaming and lottery commonly known as numbers;" and that at the hearing he might be represented by counsel to prepare and present such defense as he had. Much reliance on the argument of the first point is placed upon our decision in the case of *State* v. *Haber*, 132 *N. J. L.* 507. The facts and circumstances of that case, however, are so strikingly at odds with the facts and circumstances here that it cannot serve as an advantage to the plaintiff in error.

The balance of the argument under this point, in an endeavor to show that the plaintiff in error was not apprised sufficiently of the charge he was required to meet, consists of the citation of many cases where the legal issue was whether an *indictment* sufficiently informed a person charged of the character and nature of the alleged offense. These authorities, which are numerous and call for no mention here, are not pertinent.

The indictment of Pascal for maintaining a disorderly

house is not before us. He entered a plea to that charge. The question that is before us is a supplement to or an out-branch of that proceeding and our sole inquiry is whether plaintiff in error was afforded a fair and just summary hearing under the statute, *supra*. That he was aware of the exact nature of the charge is manifest.

It is further argued that because the sentence when originally imposed on June 9th, 1943, merely stated that the prison sentence was suspended and that the defendant was placed on probation for three years and, additionally, that a fine be paid in installments to the probation officer, and since this—the actual judgment—was not shown to have been disregarded or violated by Pascal, that therefore no case had been or could be made out in the summary hearing. We can give no weight to this reasoning. An offender is placed on probation because a court considers that he may be reformed and is persuaded that probation in the particular case is not inimical to the well-being of society generally. Compare *State* v. *Mungioli,* 131 *N. J. L.* 52. The very term "probation" connotes to the average mind an experiment or proving period; that the convicted person escapes the more severe penalty of imprisonment on condition of future good behavior, especially during the probation term; and surely good behavior necessarily excludes a return to previous habits, conduct and the like which brought the probationer into a trial court to stand trial. Any normal person is chargeable with such knowledge. Consequently there is no merit in the point advanced.

It is next said that the motion to dismiss the proceedings, after the arraignment and plea, should have been granted. This is grounded on the fact that the state's attorney said, when the prisoner was arraigned, "You have violated your probation as it was 'imposed' by Judge Loveland in that you became involved in a lottery commonly known as numbers." We do not consider it necessary to discuss this point except to say that the state, in proving its case, called former Judge Loveland to the witness stand and his testimony was that at the time he put Pascal on probation that he admonished him

to avoid evil associates, secure gainful employment and "refrain from like activities of which he had been convicted."

It is next said that the trial court committed error in stating the law and "in prejudging the case." The learned judge who presided over this summary hearing said that in his judgment the state was entitled to show what the terms of the probation were "as pronounced by the court at the time Pascal was put on probation" and that the terms imposed "need not appear on that record." The argument advanced by the plaintiff in error on this element of the matter is that no terms which did not appear in the minutes of the court could be invoked to show that Pascal had failed to live up to the terms of probation. This point is also without merit. The court record should show the disposition of the case and need not show more.

It is further argued that it was error for the court to have allowed a certain exhibit in evidence. The particular exhibit was the somewhat detailed record of Pascal in written entries which had been kept by the probation officer. We can hardly conceive of anything that was more material in a hearing of this kind than this record.

The other points made by the plaintiff in error are implicit in the points previously urged to which we have already directed attention. They require neither statement nor discussion.

It is also said that plaintiff in error was tried and convicted of a criminal offense without presentment or indictment of a grand jury and without a trial by a jury and that this is violative of our constitution, article 1, paragraphs 8 and 9. But this is not the fact. The plaintiff in error had been indicted for maintaining a disorderly house and to this charge he entered a plea of *non-vult*. The court put him on probation. He was afforded a summary hearing on whether he was a violator of that probation. The proof demonstrated that it·was an error of judgment to have put him on probation because he went back to the behavior and committed the same offenses which had previously brought about his indictment. It is thus clear that the present sentence was the sanction for

his original offense. Indeed he may be indicted again for the very acts which made out his violation of probation.

Finally it is said that the first sentence having been one to two years, the instant sentence of fifteen months to two years is error, but the statute, *supra,* is a complete answer to this since it provides that the court, after summary hearing in these circumstances, may continue or revoke the probation and suspension of sentence and may cause the sentence imposed to be executed or impose any sentence which might originally have been imposed.

The judgment under review is affirmed.