IN THE MATTER OF COSMO D. PALMISANO, MUNICIPAL
MAGISTRATE OF THE BOROUGH OF FAIRVIEW.

Argued May 16, 1955—Decided June 6, 1955.

*Mr. Milton T. Lasher,* presenter by designation of the court, argued the order to show cause.

*Mr. Charles Bertini* argued in opposition to the order to show cause.

The opinion of the court was delivered by

OLIPHANT, J.   Cosmo D. Palmisano is the Municipal Magistrate of the Borough of Fairview in Bergen County and is an attorney-at-law of this State.

Through the medium of a newspaper clipping sent anonymously to Chief Justice Vanderbilt, in which it was stated that Mr. Palmisano had appeared on behalf of a client before the Mayor and Council of the Borough of Fairview, an inquiry was made of the matter by the Administrator of the Courts. As a result of this a rule to show cause was entered by the court *sua sponte* on April 25, 1955, as to why Mr. Palmisano should not be disciplined for his conduct.

The facts are that a Mr. Joseph Nenning had erected an embroidery factory in Fairview on premises adjoining those occupied by a Mrs. Nunes and her family.   The district where the plant is located is zoned as a light industrial area. There is no borough ordinance regulating or limiting the working hours of such shops or factories and Mr. Nenning operated on a 24-hour basis.   His operation caused a vibrating of the Nunes house, was an annoyance and made it uncomfortable.   As a result thereof she made complaints to various borough officials.   Mrs. Nunes and Mr. Nenning were then orally requested to appear at what has been labeled a "gripe night session" of the mayor and council of the borough on March 7, 1955.   Such sessions are not formal, regular or

caucus meetings of the mayor and council but are held for the purpose of informal discussions of problems brought to the attention of borough officials. Following the request to appear Mr. Nenning contacted the respondent and requested him to attend the session with him "to find out what the matter was actually all about and what it actually was that he had done or was doing that was wrong." The respondent said that he asked Mr. Nenning if he had been served with a summons and he answered in the negative.

On arrival at the session the respondent inquired of the mayor, the presiding officer, whether the session was a formal one, whether it was considering a formal complaint or charges against Mr. Nenning, and just what the requested appearance was for. He stated to the mayor and councilmen that the reason for the inquiry was that if the matter was in any manner a formal hearing or if formal charges or a complaint had been made or was being considered that he would immediately disqualify himself and retire as Mr. Nenning's attorney, because he was forbidden under the rules governing the courts to practice before the governing body or an official in the municipality in which he was serving as magistrate. He was informed there was nothing formal about the meeting, that no formal charges or complaints were being considered and that the session was merely being held to discuss all the facts and to endeavor to arrive at some solution of the problem satisfactory to all parties. No satisfactory result was achieved and the matter was referred to the board of health for action.

■ *R. R.* 1:26–5(*b*) provides that "an attorney shall not practice before the governing body, or any official, or any official board or agency of a municipality in which he is serving as a magistrate or acting magistrate."

■ The rule is far-reaching and means exactly what it says. Whether such a proceeding as here held was formal or informal is of no moment. The rule is designed to prohibit an attorney who is also a magistrate from either using that office or appearing to use it for the furtherance of the interests of his private clients. He is in a position of judicial

power and the public confidence in the administration of justice cannot be allowed to diminish by the use of that power in the furtherance of the interest of private clients. The public duties of magistrates and the private duties of an attorney practicing before the mayor and council or any other agency or officer of a municipality in which he serves as such magistrate are clearly incompatible. Such practice tends to give to the public the impression that influence is being used by a party rather than the issue being decided on its merits and tends to bring the whole judicial system into disrepute. There was a clear violation of the letter and spirit of the rule in the instant case.

Of course, we are cognizant of the fact that magistrates who are also lawyers are compelled to engage in private practice because of the salaries they receive, but as stated in Canon 31 of Judicial Ethics, "In such cases one who practices law is in a position of great delicacy and must be scrupulously careful to avoid conduct in his practice whereby he utilizes or seems to utilize his judicial position to further his professional success." The conduct of an attorney who is likewise a magistrate should in every particular be above reproach and not give false color to any of his acts. See Canon 34 of Judicial Ethics. The Canons of Judicial Ethics as adopted by the American Bar Association govern the conduct of all judges of this State. *R. R.* 1:25.

We are of the opinion that the respondent by his course of conduct in the instant matter was guilty of mistaken judgment rather than an open defiance or willful violation of the rules of this court and that his conduct does not warrant discipline beyond a public reprimand.

*For reprimand*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*Opposed*—None.