STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
EDWARD JOSEPH RYAN, DEFENDANT-APPELLANT.

Argued October 7, 1980—Decided April 20, 1981.

*Gerald P. Boswell*, Assistant Deputy Public Defender, argued the cause for appellant (*Stanley C. Van Ness*, Public Defender,

attorney; *Susan Slovak*, Assistant Deputy Public Defender, of counsel and on the briefs).

*Rocky L. Peterson*, Deputy Attorney General, argued the cause for respondent (*John J. Degnan*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

Defendant was sentenced to a custodial term on his criminal convictions. He served part of that term, after which the sentence was suspended and he was placed on probation. When defendant violated the terms of his probation, the trial court sentenced him to a custodial term exceeding that originally imposed for the underlying offense. On appeal defendant challenged that sentence on double jeopardy grounds. The Appellate Division affirmed the sentence, *State v. Ryan*, 171 *N.J.Super.* 427 (1979). We granted certification, 82 *N.J.* 297 (1980), to review that determination as well as the Appellate Division's decisions denying sentence credit for time spent on probation and interpreting the impact of *N.J.S.A.* 2A:168–4 on *R.* 3:21–10(b) proceedings.

I

In January 1974 defendant, Edward Joseph Ryan, pleaded guilty to charges of larceny and breaking and entry with intent to steal. He was sentenced to concurrent terms of three to five years in New Jersey State Prison. After serving approximately six months in custody defendant moved for sentence modification under that provision of *R.* 3:21–10(b) permitting "entry of the defendant into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse * * *." The original sentencing court granted the motion effective August 1, 1974. It transferred defendant to Patrick House, a

narcotic treatment facility of Jersey City Medical Center and placed him on probation for two years.[1]

In February 1977 Ryan was cited for violating the conditions of his probation. He pleaded guilty to absconding from probationary supervision and leaving the state without permission. It further developed at a hearing on those charges that seven detainers had been lodged against defendant; the State of New York was attempting to extradite him; he was serving thirty days on a conviction for malicious damage and larceny; and he was facing additional punishment for a contempt of court conviction.

Confronted with this supplemental information the trial court revoked both the probation and the suspension of the original three to five year sentence, and sentenced defendant to concurrent terms of five to seven years, the statutory maximum for the underlying offenses. On appeal to the Appellate Division defendant challenged that sentence as violating his double jeopardy rights on the ground that his original sentence was impermissibly increased after having been partially executed. Ryan further claimed entitlement to sentence credit for the time he had spent in the program prior to reincarceration. In addition, he contested the trial court's power to invoke the provision of *N.J.S.A.* 2A:168–4 allowing imposition of a custodial term after revocation of probation, claiming that the statute is inapplicable in the context of *R.* 3:21–10(b) sentence modifications.

---

[1]So much of the transcript on the motion hearing as has been furnished to us contains no warning by the court to defendant concerning the consequences of probation violation. Ryan signed a standard form of the probation department, informing him that "[i]f you fail to observe the conditions of your probation you may be returned to court and required to serve *your sentence* in an institution" (emphasis supplied). No mention was made of the possibility of any increase in the term that had previously been imposed. Henceforth, in similar circumstances the court should spell out in unmistakable terms precisely what penalties may await a defendant who does not adhere to the conditions of his probation. See also *R.* 3:21–7.

In rejecting these contentions the Appellate Division relied on the language of *N.J.S.A.* 2A:168–4 authorizing "the imposition of any sentence that could have been imposed for the underlying crime after probation violation has occurred." 171 *N.J.Super.* at 434. Hence the court below approved the sentence of five to seven years after probation violation, even though the original sentence had aggregated three to five years and had been partially served. For its conclusion it relied heavily on *State v. Cunningham*, 143 *N.J.Super.* 415 (App.Div.1976), which in similar circumstances upheld the imposition of a higher sentence after violation of probation. 171 *N.J.Super.* at 432.

In disposing of defendant's contention that he was entitled to sentence credit for time spent on probation, the Appellate Division stressed the substantive differences between a probationer's condition of relative freedom of movement and a custodial prisoner's confinement. It concluded that the statutory scheme and prevailing case law recognize those differences in declining to equate probation and prison time. *Id.* at 441–43. See *State v. Smeen*, 147 *N.J.Super.* 229, 233–34 (App.Div.), certif. den., 74 *N.J.* 263 (1977). See also *Hall v. Bostic*, 529 *F.*2d 990, 991 (4th Cir. 1975), *cert.* den., 425 *U.S.* 594, 96 *S.Ct.* 1733, 48 *L.Ed.*2d 199 (1976) ("There is nothing unusual in the denial * * * of credit for probation or parole time against a prison sentence. It is common to both state and federal probation and parole systems. The validity of such denial has been universally recognized both in federal and state decisions" (footnote omitted).). However, in denying sentence credit for probation time, the court below did so without prejudice to defendant's right to move in the trial court for credit limited to the time he had spent at Patrick House, inasmuch as the record was uninformative as to "the extent to which defendant's liberty had been restrained during the two months or so he had spent there." 171 *N.J.Super.* at 442.

Finally, the Appellate Division refused to adopt defendant's position that the provision of *N.J.S.A.* 2A:168–4, which empowers the trial court, after revocation of probation, to "impose any

sentence which might ordinarily have been imposed" does not apply to probationary terms meted out in connection with *R.* 3:21–10(b) modifications. The court held that the application of the statute to such probation terms was manifestly in keeping with the legislative mandate, *N.J.S.A.* 2A:168–1 and *N.J.S.A.* 2A:164–17, as well as the case law on the subject. See, *e. g.,* *State v. Johnson,* 133 *N.J.Super.* 457 (App.Div.1975).

On these latter two issues, namely, the disallowance of sentence credit for time spent on probation, at least under the circumstances of this case, and the applicability of *N.J.S.A.* 2A:168–4 to modification of sentence proceedings under *R.* 3:21–10(b), we are in accord with the Appellate Division's disposition and generally adopt its reasoning.[2] Our opinion in *State v. Williams,* 81 *N.J.* 498 (1980), filed after the Appellate Division decision in this case was handed down, is scant support for defendant's sentence credit argument. The underpinning of the credit allowance for time spent on probation in *Williams* was the evident unfairness of denying credit inasmuch as uninterrupted service of defendant's sentence was rendered impossible only through the trial court's error in granting probation. 81 *N.J.* at 500. See also *State v. Braeunig,* 135 *N.J.Super.* 89, 94 (Law Div. 1975), *mod. on other grounds,* 140 *N.J.Super.* 245 (App.Div.1976).

However, because we disagree with the Appellate Division's resolution of defendant's double jeopardy argument, we reverse the judgment below and reinstate the original three-to-five year aggregate custodial sentence.[3]

---

[2]Our discussion of the applicability of *N.J.S.A.* 2A:168–4 to *R.* 3:21–10(b) proceedings would not be different had this case arisen under the parallel provision of the New Jersey Code of Criminal Justice, generally effective September 1, 1979. *N.J.S.A.* 2C:45–3(b) in its amended form reads as follows:

When the court revokes a suspension or probation, it may impose on the defendant any sentence that might have been imposed originally for the offense of which he was convicted.

[3]Even though defendant was paroled prior to the time his appeal was heard in the Appellate Division, the question of appropriate sentence following

## II

■ Prior to the adoption of the Code of Criminal Justice, resort to the sentencing provision of *N.J.S.A.* 2A:168–4 was more frequently found in situations in which, on conviction of the underlying offense, the court had either suspended the imposition of *any* sentence or had imposed sentence and immediately suspended the execution thereof and had placed the defendant on probation.[4] When defendant thereafter violated probation, a number of options were open to the trial court under the statute: it might continue the probation or revoke both the probation and the suspension of any sentence previously imposed; following any such revocation it might require a defendant to serve the sentence originally imposed or it might impose any sentence that could have been meted out originally on conviction of the underlying offense.[5]

The case law recognizing the applicability of *N.J.S.A.* 2A:168–4 in the stated circumstances is clear. See *In re White*, 18 *N.J.* 499 (1955); *State v. Driesse*, 95 *N.J.Super.* 491 (App.Div. 1967); *State v. Zachowski*, 53 *N.J.Super.* 321 (App.Div.1959). Although the statements of principle justifying the imposition

---

violation of probation is not moot. The duration of his parole is limited by "the term specified in the original sentence." *N.J.S.A.* 30:4–123.65. Should defendant's parole be revoked and he be recommitted, "the term of further imprisonment upon such recommitment * * * shall not exceed the original sentence determined from the date of conviction." *N.J.S.A.* 2C:43–9(b).

[4]Under the Code of Criminal Justice it is no longer necessary for the sentencing court to impose and suspend the execution of a sentence before placing a defendant on probation. Rather, the Legislature now treats probation as a sentence in and of itself, hence the statutory reference to a court that "sentences [an offender] to be placed on probation." *N.J.S.A.* 2C:45–1(a). Furthermore, probation is properly viewed as a conditional sentence in that the defendant remains subject to a prison term for failure to comply with the conditions imposed by the court. See *N.J.S.A.* 2C:45–3(a)(4) and ABA Standards, Probation § 1.1(b) and Commentary (Approved Draft, 1970).

[5]For a discussion of the philosophy of probation and its role in our criminal jurisprudence one may profitably consult Justice Jacobs' opinion for the court in *Adamo v. McCorkle*, 13 *N.J.* 561, 563–67 (1953).

of a custodial sentence after probation revocation under *N.J.S.A.* 2A:168–4 have not been entirely consistent, *compare State v. Wall,* 126 *N.J.Super.* 594, 596 (App.Div.1976), *and State v. Pallitto,* 107 *N.J.Super.* 96, 100 (App.Div.1969), certif. den., 55 *N.J.* 309 (1970), *with State v. Pascal,* 133 *N.J.L.* 528, 532–33 (Sup.Ct.1946), *aff'd,* 1 *N.J.* 261 (1949), the sentence imposed after revocation of probation should be viewed as focusing on the original offense rather than on the violation of probation as a separate offense. This is borne out by the statute's limitation on the sentence that follows a violation of probation to the sentence already imposed or one that might originally have been imposed, thereby anchoring the proceedings to the original offense. The custodial term allowed by the statute is imposed *because* of the defendant's failure to abide by the conditions of his probation but is not *for* the violation of those conditions. A respected text offers this exposition of the situation in which a defendant's entire original sentence was suspended:

> In the event the Court finds that the defendant has violated the terms of his probation, the Court may either continue or revoke the original probation and the suspension of sentence. In the event the Court chooses to revoke the original probation, it may then cause the original suspension of sentence to be executed or it may impose any sentence, including the maximum, which might originally have been imposed. Imposing the maximum sentence for the original offense after revocation of probation without grand jury indictment or trial by jury is not unconstitutional, since the new sentence is only a sanction for defendant's original offense for which he had been properly tried. [R. Knowlton & D. Coburn, *New Jersey Criminal Practice,* § 24:11 (footnotes omitted).]

That the imposition of a custodial term after revocation of probation does not violate a defendant's double jeopardy rights is beyond question in view of the Supreme Court's recent flat statement to that effect in *United States v. DiFrancesco,* —— U.S. ——, ——, 101 *S.Ct.* 426, 438, 66 *L.Ed.2d* 328, 346 (1980): "[T]here is no double jeopardy protection against revocation of probation and the imposition of imprisonment." But that does not answer the question squarely presented here, not addressed by the New Jersey authorities cited above, and apparently left open by the Supreme Court in *DiFrancesco, supra,* namely, whether double jeopardy considerations militate against

*increasing* the defendant's prison sentence after violation of probation *when he has already served a portion of that custodial term.*[6] That feature of the case is central to Ryan's position. Simply stated the contention is that jeopardy attached as soon as defendant commenced serving his prison term, hence principles of double jeopardy foreclosed the imposition of any increased term after violation of probation. We agree.

### III

Out of respect for our dissenting colleague's view that "application of the reasoning and doctrine in *DiFrancesco* to the factual pattern of the instant case indicates an absence of a double jeopardy obstacle," *post* at 17, we first address that contention directly.

The Supreme Court in *DiFrancesco* held 18 *U.S.C.* § 3576, which authorizes the prosecutor to appeal the imposition of sentence on a defendant who qualified as a "dangerous special offender." It ruled that such an appeal does not violate the Double Jeopardy protection against double punishment. *DiFrancesco,* —— *U.S.* at ——, 101 *S.Ct.* at 438, 66 *L.Ed.*2d at 347. That case is distinguishable from the present one.

The issue in *DiFrancesco* was stated in this fashion: "[o]ur task is to determine whether a criminal sentence, *once pronounced,* is to be accorded constitutional finality and conclusiveness similar to that which attached to a jury's verdict of acquittal." *Id.* at ——, 101 *S.Ct.* at 435, 66 *L.Ed.*2d at 343

---

[6]In *DiFrancesco* the Supreme Court, after reviewing the common law double jeopardy principles, pointed out:

> [O]ur Double Jeopardy clause was drafted with the common law protections in mind. This accounts for the established practice in the federal courts that *the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence. [United States v. DiFrancesco, supra,* —— *U.S.* at ——, 101 *S.Ct.* at 435, 66 *L.Ed.*2d at 344 (citations omitted) (emphasis added).]

(emphasis added). The instant case is concerned with whether a criminal sentence is entitled to finality once the defendant *has begun to serve it.* Our holding is that in the latter circumstances, jeopardy attaches once the defendant has commenced serving his prison term.

The distinction between this case and *DiFrancesco* is further highlighted by the expectation analysis offered in the latter case. Since the defendant in *DiFrancesco* had been tried as a dangerous special offender under 18 *U.S.C.* §§ 3575 and 3576, the Supreme Court noted that he had no legitimate expectation of finality in his original sentence. The statute gave him notice of the possible appeal. *Id.* at ——, 101 *S.Ct.* at 438, 66 *L.Ed.*2d at 347. In the case now before us the defendant had no reason to expect that his original sentence was not final at the time it was imposed and his imprisonment began. When he subsequently moved for sentence modification under *R.* 3:21–10(b), the defendant was seeking special, more lenient treatment subject to certain conditions. Thus, the defendant was on notice that a "breach of those conditions may result in revocation of the beneficial treatment", but given the finality of his original sentence, he would expect "at the very worst [that] the original sentence may be reinstated." *Id.* at ——, 101 *S.Ct.* at 443, 66 *L.Ed.*2d at 353 (Brennan, J., dissenting).

It is unmistakably clear that the Supreme Court, in *DiFrancesco*, did not intend to overrule the long-standing principle that one of the purposes of the guarantee against double jeopardy is to protect a criminal defendant against double jeopardy is to protect a criminal defendant against the imposition of more than one punishment for a single offense. *Id.* at ——, 101 *S.Ct.* at 437–438, 66 *L.Ed.*2d at 346–47. See *Whalen v. United States,* 445 *U.S.* 684, 688, 100 *S.Ct.* 1432, 1436, 63 *L.Ed.*2d 715, 721 (1980); *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969). In that connection this Court has recognized that jeopardy attaches as soon as execution of the sentence commences. *State v. Laird,* 25 *N.J.* 298, 306–07 (1957). We have likewise acknowledged the princi-

ple that once a sentence has gone into operation, "serious double jeopardy problems" would arise if the trial judge were permitted to increase that sentence. *State v. Matlack*, 49 *N.J.* 491, 501 (1967); see *State v. Vaccaro*, 150 *N.J.Super.* 410, 413 (App.Div. 1977). Those problems are squarely presented here.

The Appellate Division looked to *State v. Cunningham, supra,* for authority in upholding the imposition of the increased sentence in this case. It sought support as well from *North Carolina v. Pearce, supra,* for its analogy to cases where a conviction is reversed on appeal, the original sentence vacated, and a more serve penalty imposed following retrial. Finally, in affirming the longer prison term imposed on Ryan the Appellate Division rejected defendant's argument that his resentencing should be governed by the provisions of *N.J.S.A.* 2A:164–16, covering split sentences to county institutions. The court found this case controlled by *N.J.S.A.* 2A:164–17, requiring all except life sentences to be for a maximum and minimum term. 171 *N.J.Super.* at 438. This last point need not detain us as we are in accord with the Appellate Division's view of it.

*State v. Cunningham, supra,* cannot be distinguished in any significant respect from the case before us. In *Cunningham* defendant was convicted of possession of a controlled dangerous substance and sentenced to a prison term of two to three years. After serving some four months of the term he sought sentence reconsideration under *R.* 3:21–10. In granting the application the trial court suspended execution of the unserved balance of the prison sentence and placed defendant on probation for three years, with a special condition that he enter and successfully complete a specified drug rehabilitation program. Defendant violated his probation by leaving the program without consent of the staff, whereupon the court revoked his probation and sentenced him to three to four years in prison pursuant to *N.J.S.A.* 2A:168–4. Defendant's motion for postconviction relief was denied and the Appellate Division affirmed, holding that the imposition of the longer prison sentence did not violate defendant's double jeopardy rights.

*Cunningham* is based on two propositions, neither of which is persuasive. First, even though double jeopardy attaches when execution of a sentence commences, the increased term after violation of probation "is imposed for violation of probation, caused by defendant's subsequent act, and is not a second or additional punishment for the original crime," 143 *N.J.Super.* at 417. We have rejected this notion, *supra* at 7–8. Second, *Cunningham* warns that "a contrary ruling * * * would undoubtedly have a chilling effect on the sentencing judge's willingness to reconsider a sentence and place a defendant on probation, with or without special conditions." *Id.* at 418. We do not share this apprehension.

To be sure, whenever a sentencing judge must decide whether to permit an inmate to leave the prison walls for entry into a drug rehabilitation program, the decision poses a risk. The same risk is inherent in suspending the imposition of any sentence or in sentencing the offender to probation pursuant to *N.J.S.A.* 2C:45–1. But the sentencing discretion can be exercised in the case of a particular offender who has served a portion of his custodial term as well as it can in the case of one who has violated the terms accompanying his suspension or probation. We acknowledge the absence of perfect symmetry between the first situation, in which the defendant can be returned to confinement only for the balance of his previously imposed sentence, and the second, where the defendant faces the maximum term that could be imposed for the offense of which he was convicted. These are appropriate matters for consideration by the court faced with a motion for modification of sentence under *R.* 3:21–10.[7] If, under the circumstances of this case and *Cunningham*, the court's exercise of discretion is "chilled" by the prospect that a probation violator will be exposed to no more than the unserved balance of his term—a

---

[7]For example, one might reasonably expect that the experience of a defendant who has spent some time behind bars and had a taste of prison life might provide a greater deterrent to violation of probation.

prospect we deem unlikely—that is simply the price of vindication of a defendant's right not to put in double jeopardy. As our decision indicates, we disapprove of *State v. Cunningham, supra,* and that case may no longer be considered as acceptable authority.

Finally, we address the State's contention, adopted by the Appellate Division, that when a defendant by his own motion has his original sentence set aside, the constitutional guarantee against double jeopardy does not restrict the imposition of whatever sentence may be legally authorized, even though it may be greater than the original sentence imposed. On the strength of *North Carolina v. Pearce, supra,* the court below attempted to apply to the instant matter the principal derived from that case that a more severe sentence upon *reconviction* is permitted when justified by defendant's subsequent conduct, absent any motive of retaliation for the taking of an appeal. See *Pearce, supra,* 395 *U.S.* at 723–26, 89 *S.Ct.* at 2079–81, 23 *L.Ed.*2d at 668–70. Proceeding by way of analogy the Appellate Division concluded that "a sentence imposed after probation has been violated can reflect the added basis for evaluating defendant's amenability to reform, namely, his response to probation." 171 *N.J.Super.* at 436.

There can be no doubt that defendant's subsequent conduct is an appropriate concern at the time of sentencing after reconviction. But the linchpin of *Pearce*'s analysis is the premise that

the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean. * * * [S]o far as the conviction itself goes, and that part of the sentence that has not yet been served, it is no more than a simple statement of fact to say that the slate *has* been wiped clean. The conviction *has* been set aside, and the unexpired portion of the original sentence will never be served. [395 *U.S.* at 721, [89 *S.Ct.* at 2078], 23 *L.Ed.*2d at 667 (emphasis in original).]

Here, Ryan has not attacked his original conviction. His *R.* 3:21–10(b) motion sought only a modification of sentence, not a new trial. The granting of that motion resulted only in a suspension of the execution of his original sentence pending successful completion of the drug rehabilitation program and

probationary term, not in a vacation or annulment of that sentence. In effect the sentence became temporarily and conditionally inoperative. Under the circumstances there was no impairment of the jeopardy that attached at the execution of the sentence. The slate was not "wiped clean" within the meaning of *Pearce.*

## IV

The sentence imposed following defendant's violation of probation is vacated and the original sentence aggregating three to five years is reinstated. The judgment of the Appellate Division is:

Reversed.

SCHREIBER, J., concurring in part and dissenting in part.

The Supreme Court opinion in *United States v. DiFrancesco,* —— U.S. ——, 101 *S.Ct.* 426, 66 *L.Ed.*2d 328 (1980), strongly supports the proposition that resentencing a defendant whose probation has been revoked is not inhibited by the Double Jeopardy Clause which protects a person from being "subject for the same offence to be twice put in jeopardy of life or limb." *DiFrancesco* is not on "all fours" with the present case, but it dealt with the same legal principles implicated in this case. *DiFrancesco* involved an increased sentence following an appeal by the government challenging the original sentence as too lenient. In this case, the increased sentence followed revocation of probation. However, in both cases, the increased sentences were authorized by statute. Defendants in both cases had begun to serve their original prison terms before the increases were imposed. Consequently, the double jeopardy analysis followed by the Supreme Court is entitled to thoughtful consideration in resolving this federal constitutional question.

Writing for the Court in *DiFrancesco,* Justice Blackmun stated that the central objective of the double jeopardy principle was the prohibition against successive trials, as evidenced by the

common law roots of the Clause, namely pleas of *autre fois acquit, autre fois convict,* and *pardon.* The pronouncement of sentence, he declared, has never carried the finality that attaches to an acquittal. *Id.* at ——, 101 *S.Ct.* at 435, 66 *L.Ed.2d* at 343. Thus in *North Carolina v. Pearce,* 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.2d* 656 (1969), the defendant, who successfully obtained a new trial after appeal, could be subjected to a greater sentence than that which had been imposed following the first trial.

Justice Blackmun then explained:

> The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been considered to be violative of the Clause. *Thus, there is no double jeopardy protection against revocation of probation and the imposition of imprisonment.* See, *e. g., Thomas v. United States,* 327 *F.2d* 795 (CA10), cert. denied, 377 *U.S.* 1000, 84 *S.Ct.* 1936, 12 *L.Ed.* 1051 (1964). There are other situations where probation or parole may be revoked and sentence of imprisonment imposed. [citations omitted] While these criminal sanctions do not involve the increase of a final sentence, and while the defendant is aware at the original sentencing that a term of imprisonment later may be imposed, the situation before us is different in no critical respect. Respondent was similarly aware that a dangerous special offender sentence is subject to increase on appeal. His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked. [—— *U.S.* at ——, 101 *S.Ct.* at 437, 66 *L.Ed.2d* at 346; emphasis supplied] [1]

According to Justice Blackmun, the dictum found in *United States v. Benz,* 282 *U.S.* 304, 307, 51 *S.Ct.* 113, 114, 75 *L.Ed.* 354, 356–357 (1931), that an increase in sentence after the defendant

---

[1]Contrary to the majority opinion, the *DiFrancesco* court did not specifically leave open the question of whether double jeopardy militated against increasing the sentence of a defendant whose probation was revoked when the probation commenced after some part of the custodial term had been served. See *ante* at 8–9. The quotation in footnote 6 of the majority opinion, *ante* at 9, refers to a situation in which the sentencing judge recalls a defendant who is out on bail to correct an erroneous sentence. See, *e. g., United States v. DiLorenzo,* 429 *F.2d* 216, 221 (2 Cir. 1970), *cert.* den. 402 *U.S.* 950, 91 *S.Ct.* 1609, 29 *L.Ed.2d* 120 (1971).

had begun service of his sentence violated the double jeopardy guarantee against multiple punishment, had been erroneously derived from *Ex Parte Lange*, 18 Wall. 163, 85 *U.S.* 163, 21 *L.Ed.* 872 (1874). In *Ex Parte Lange* the statute involved authorized imprisonment up to one year *or* a fine. After the defendant paid the fine, the trial court resentenced him to a year's imprisonment. The *Lange* Court observed that to impose imprisonment after payment of the fine was to punish twice for the same offense. Justice Blackmun noted that no double jeopardy problem would have existed if the statute had provided punishment of both fine and imprisonment. He limited the *Benz* dictum and the holding in *Lange* "to Lange's specific context." —— *U.S.* at ——, 101 *S.Ct.* at 438, 66 *L.Ed.2d* at 347. Justice Blackmun then concluded:

Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal.

Under such circumstances there can be no expectation of finality in the original sentence. See S.Rep.No.91–617, p. 97 (1969); Dunsky, The Constitutionality of Increasing Sentences on Appellate Review, 69 J.Crim.L. & Criminology 19, 32 (1978). [*Ibid.*]

Thus the multiple punishment feature of the Double Jeopardy Clause only prevents the subjection of a defendant to punishment in excess of that prescribed by the legislature.[2] That this construction accords with the Supreme Court's understanding has recently been confirmed in *Albernaz v. United States*, —— *U.S.* ——, 101 *S.Ct.* 1137, 67 *L.Ed.2d* 275 (1981), wherein the Court wrote, albeit in dictum, with respect to the Double Jeopardy Clause:

Thus the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended ... to impose multiple punishment,

---

[2]This is not to say that a defendant can be resentenced once the sentence has been served. See *Ex Parte Lange*, 18 Wall. 163, 85 *U.S.* 163, 176, 21 *L.Ed.* 872, 879 (1874).

imposition of such sentences does not violate the Constitution. [*Id.* at ——, 101 *S.Ct.* at 1145, 67 *L.Ed.*2d at 285]

Application of the reasoning and doctrine in *DiFrancesco* to the factual pattern of the instant case indicates the absence of a double jeopardy obstacle. The trial court had the authority to suspend "the imposition or execution of sentence, and also to place the defendant on probation...." *N.J.S.A.* 2A:168–1. Upon violation of the probation terms, the trial court was empowered to "impose any sentence which might originally have been imposed." *N.J.S.A.* 2A:168–4. The statutory underpinnings satisfying double jeopardy are self-evident. The authorization for imposition of *any* sentence contemplated an increased sentence over that originally imposed before sentence was suspended. Accordingly, a defendant should not have any expectation of finality in the sentence whic·' has been suspended. See *United States v. DiFrancesco*, —— *U.S.* at ——, 101 *S.Ct.* at 438, 66 *L.Ed.*2d at 347. Thus the defendant could lawfully be sentenced to any term within the statutory maximum, less credit for time served.

The defendant was not subject to a second trial. The suspension of his sentence was at his request. "[T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *United States v. Scott*, 437 *U.S.* 82, 90, 98 *S.Ct.* 2187, 2193, 57 *L.Ed.*2d 65, 79 (1978). Increase of the sentence after defendant had commenced serving his sentence did not subject him to multiple punishment. He was entitled to credit for all time previously served and his total period of incarceration would be substantially less than the maximum period for which he could have been imprisoned.

If defendant had been incarcerated pending trial, convicted, given a custodial sentence which was suspended and placed on probation, it is conceded double jeopardy would not prevent a court from imposing a greater sentence upon violation of conditions of probation. *United States v. DiFrancesco*, —— *U.S.* at ——, 101 *S.Ct.* at 438, 66 *L.Ed.*2d at 346; see *In re White*, 18

*N.J.* 449 (1955). If defendant had been convicted, sentenced and incarcerated while his appeal was pending, and later obtained a new trial, double jeopardy would not bar the court from imposing a greater sentence after a second conviction. *North Carolina v. Pearce*, 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.*2d 656 (1969). If in these circumstances the sentencing slate is wiped clean, why is it not equally so where the defendant has violated his probation which had been granted at his request after commencement of his incarceration?

I would hold the Double Jeopardy Clause did not bar defendant's resentencing.

An additional consideration in this case, however, is the legitimate expectation of the defendant in view of what occurred at the time sentence was suspended. The majority opinion has referred to that expectation by calling attention to the standard form of the Monmouth County Probation Department which states:

> If you fail to observe the conditions of your probation you may be returned to court and required to serve your sentence in an institution.

The defendant's signature was affixed to the form beneath a legend that the statement had been read and explained to him. However, at the hearing on the motion to suspend the sentence, the trial court made no reference to the consequences of defendant's failure to adhere to the probation terms. Moreover, during the hearing on violation of probation, defendant argued that the sentence could not legally exceed the custodial term originally fixed. Accordingly, it may well have been defendant's expectation that his custodial sentence would remain the same because of the statement in the form. If upon resentencing the trial court had found that was a reasonable expectation, foreclosing imposition of a longer sentence would have been warranted as a matter of fundamental fairness or due process. *Cf. State v. Taylor*, 80 *N.J.* 353, 364 (1979) (validity of plea bargain depended on "defendant's reasonable expectations drawn from the terms of the bargain"). I would remand the matter to the trial court for a factual determination on this issue.

I fully agree with and join in the majority opinion with respect to the disallowance of sentence credit for time spent on probation and the applicability of *N.J.S.A.* 2A:168–4.

*For reversal*—Chief Justice WILENTZ, and Justices SULLI-VAN, PASHMAN, CLIFFORD, HANDLER and POLLOCK—6.

*Concurring in part and dissenting in part*—Justice SCHREIB-ER—1.