IN THE MATTER OF ROBERT A. DELSORDO, AN
ATTORNEY AT LAW.

May 23, 1984.

## ORDER

The Disciplinary Review Board having filed a report charging ROBERT A. DelSORDO of RUNNEMEADE with unethical conduct by using his public office to attempt to obtain an advantage for himself and his client in violation of *DR.* 1–102(A)(3), (4) and (6) and *DR.* 8–101(A)(1), and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is suspended for a period of one year and until the further order of this Court, effective June 11, 1984; and it is further

ORDERED that ROBERT A. DelSORDO be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that ROBERT A. DelSORDO reimburse the Office of Attorney Ethics for appropriate administrative costs, including the production of transcripts; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.

## APPENDIX

Report and Recommendation of the Disciplinary
Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon a presentment filed by the District IV Ethics Committee for Camden and Gloucester Counties. The presentment charges respondent with specific disciplinary violations arising from his participation in the formation and conduct of a used car business in the Borough of Somerdale, while also serving as a Municipal Court Judge of that Borough.

Commencing on about May 1976, respondent, while Judge of the Somerdale Municipal Court, represented Sadie Sama, her sister-in-law, Amelia Thomas, as well as Joseph Thomas, her husband, in a business venture for the sale of motor vehicles. Through prior dealings with Joseph Thomas, respondent knew that he had vast experience in the used car business.

The location of the business was 124 North White Horse Pike, Somerdale, New Jersey. The premises were owned by Nicholas Sama, the husband of Sadie Sama, for whom the respondent also performed occasional minor legal work as a convenience to the family. In this capacity respondent drafted a lease for these business premises running from Nicholas

Sama, lessor, to Maiden Lane Motors, Inc., lessee. The lease was drafted and acknowledged by respondent on June 1, 1976. Respondent represented both parties in the drafting and execution of the lease.

On June 3, 1976 respondent formed Maiden Lane Motors, Inc., filing the Certificate of Incorporation with the Secretary of State on June 9, 1976. The Certificate of Incorporation listed the respondent as the registered agent of the corporation, and gave the address of his law office as its principal office. The paper principals of this corporation were Sadie Sama and Amelia Thomas.

In order to operate the car dealership, the corporation had to first obtain a Motor Vehicle Dealership License from the New Jersey Department of Motor Vehicles. Requisite to obtaining this license was written approval which would "certify the Municipal Clerk or Zoning Commission has approved the location, establishment and maintenance of the Dealership" at the location described in the application.

Respondent sought to obtain this approval at the meeting he attended with Harry Rice, President of the Borough Council of Somerdale, held at the latter's home on Memorial Day weekend in May 1976. Respondent was accompanied by Joseph Thomas. Anthony Romano, the plumbing inspector of Somerdale, was also present with Rice.

Since the zoning officer of Somerdale was ill and hospitalized at the time, it was decided at the meeting that Anthony Cutrera, the building inspector, was the Borough's acting zoning officer. Cutrera was called to verify this and he drove over to the meeting. After his arrival, the proposed business of Maiden Lane Motors was discussed. Respondent stated that the dealership would only sell motorcycles, motor homes and mopeds. In response to a question from Romano, respondent also stated that he had an interest in the business though he did not specify the precise nature of that interest.

Respondent asked Cutrera whether he would sign the application for the Motor Vehicle Dealer's License. Cutrera was reluctant to do so. Rice and Romano advised him to check with the Borough Solicitor, James Maloney, Esq., to determine if he had the authority to sign the application. Respondent however sought to reassure Cutrera that as the Municipal Court Judge of Somerdale he would not ask him to do anything illegal. The next day, based on respondent's representations, Cutrera signed the application. As evidence later established, the front of this application did not indicate that the business applied for was for either "mobile homes" or "motorcycles" although boxes for these categories existed on the application. Rather, the box checked was for "new and used vehicles."

In 1976 used car lots were specifically prohibited by the Somerdale zoning ordinance. Nevertheless, commencing on or about June 3, 1976 Maiden Lane Motors, Inc., engaged in the business of buying, selling and dealing in motor vehicles until sometime in October of that year. During this period, the corporation purchased 26 cars at a wholesale price of some $42,000, and 92 checks were written against the corporate account. Of these checks, at least 8 were signed by respondent. Eighty-one checks were signed by Joseph Thomas with the paper principals signing only three. Respondent also purchased a car for his father through the corporation, and accompanied Joseph Thomas to car auctions where used automobiles were purchased wholesale. No mobile homes or motorcycles were ever purchased; two mopeds were obtained as gifts for relatives.

During the first few weeks in July and until shortly after he resigned his judgeship on July 14, 1976, respondent improperly interacted with numerous public officials of the Borough which he served either on behalf of his client, Maiden Lane Motors, Inc., or Nicholas Sama by acting gratuitously or at Sama's request. On Saturday, July 3, 1976, respondent interjected himself and offered opinions to Felix J. Peterson, Chairman of the Site Plan Review Committee of the Somerdale Planning

Board that site plan review was not necessary for work in progress at the site of Maiden Lane Motors, Inc., despite the fact that the Borough Ordinance clearly mandated such review for work done to commercial properties. Respondent expressed a similar opinion on Tuesday, July 6, 1976, to the Borough Engineer, Charles Riebel, who testified that, had the proposed construction been submitted to him, he would have recommended numerous changes. However, he acquiesced to respondent's comments when DelSordo indicated that having already obtained a building permit site plan review had become unnecessary. Later in the week, probably Wednesday, July 7, 1976, respondent initiated a telephone conversation with Mayor James Perry. The Mayor interpreted the respondent's call as one where respondent was trying to take him into respondent's confidences by telling him that he, the respondent, had a lot of money sunk into the business and that respondent therefore requested a conference with the Mayor and the municipal prosecutor in order "to work out" the problem. The Mayor, believing such a private meeting to be improper, rebuffed respondent's suggestion. Shortly thereafter the Mayor called a public meeting which was held on Monday evening, July 12, 1976, at the Borough Hall. The meeting was held right after the monthly caucus meeting of the governing body. Present were the Mayor, the Borough Solicitor, the members of the Council, Anthony Cutrera and various other officials, the respondent, Sadie Sama and Amelia Thomas. After some heated discussion during which respondent advocated the interests of his clients the meeting broke off. The next day respondent tendered his written resignation which stated that he was resigning his judgeship "in order that I may actively pursue a business venture in the Borough of Somerdale."

On August 11, 1976 the Mayor and Borough Council of Somerdale passed a Resolution rescinding the acts of Anthony Cutrera in signing the official application for the Motor Vehicle Dealer's License. The Resolution declared that Cutrera's actions were *ultra vires* in that he was not the acting zoning

officer of Somerdale and so had no authority to sign the application.

On or about December 1976 the Camden County Grand Jury returned Indictment No. 541–76 in 2 counts which charged respondent with conspiracy to commit misconduct in office (N.J.S.A. 2A:98–1), and with misconduct in office (N.J.S.A. 2A:85–1). Trial on the charges was scheduled for October 31, 1977. On that date, a plea bargain agreement was entered into by respondent and the Camden County Prosecutor's Office whereby the indictment was dismissed in return for respondent's guilty plea to an Accusation (No. 260–77) charging him with engaging in the business of buying, selling and dealing in motor vehicles without being authorized (N.J.S.A. 39:10–19). The plea was taken before Judge I.V. DiMartino. Respondent was sentenced to a one to two year suspended jail term, one year probation and a $500 fine on January 12, 1978.

In protracted hearings before the District IV Ethics Committee attention focused on respondent's involvement with Maiden Lane Motors, Inc., and on the allegations of improper influence on the various municipal officials with whom respondent met. The Committee found that his plea to the accusation was conclusive evidence of respondent's guilt of the underlying charges. It noted, however, that the gravamen of the wrong was respondent's role in the licensing of the corporation, in which he met with borough officials and secured Cutrera's signature on an application which contained materially false statements. The Committee determined this to be a violation of DR 1–102(A)(3), (4) and (6).

The Committee also found respondent violated R. 1:15–1(c) in his representation of Maiden Lane Motors, Inc. before various municipal officials of Somerdale. While the Committee specifically held that the meeting at Harry Rice's house constituted neither a formal nor informal session of a public body, it did find that the nature of the meeting, to secure a signature on the licensing application, and respondent's attempt to use his

public office to obtain an advantage for himself and his client was violative of *DR* 8–101(A)(1).

Finally, the Committee found that respondent again violated *DR* 8–101(A)(1) when he met with other officials, agencies and offices of the Borough of Somerdale in his representation of Maiden Lane Motors, Inc. Since he was Municipal Court Judge of Somerdale during all of these proceedings, the Committee believed that his actions on behalf of the corporation were improper.

Moreover, the Committee found that respondent's activities were not limited to those of an advocate for a client. Rather, the Committee held that the proofs overwhelmingly established that "the respondent had a financial interest or an anticipated financial interest in the business [of Maiden Lane Motors, Inc.]."

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee, in finding respondent guilty of unethical conduct, are fully supported by clear and convincing evidence.

Respondent himself acknowledges that the Committee's determinations are correct. In this regard, his guilty plea to the Accusation charging him with the criminal violation of N.J.S.A. 39:10–19 is conclusive evidence of his guilt in this proceeding. *In re Mirabelli,* 79 *N.J.* 597 (1979).

Nor does respondent dispute the Committee's findings concerning the impropriety of his appearances before the municipal officials of Somerdale. *R.* 1:15–1(c) prohibits an attorney who is a judge of a municipal court from practicing before any governing body of the municipality in which he serves. *In re Palmisano,* 18 *N.J.* 497 (1955), stands for the proposition that even an informal session at which a magistrate is in attendance violates the rule in question.

There can be little doubt that respondent used his position as Somerdale Municipal Court Judge to favorably influence the way in which Maiden Lane Motors, Inc., would be treated by the Borough officials. These improper actions are highlighted during the June 3, 1976 meeting at Harry Rice's house where Anthony Cutrera agreed to sign the corporation's dealership license application. Though the dealership was not yet established, its location had not been approved by the municipal governing board, and Cutrera's authority to sign the application was questionable, respondent was nevertheless able to convince Cutrera to sign the application. He did this by informing Cutrera that he was a judge and that he would therefore not ask him to do anything illegal. The influence that this had on Cutrera is obvious. Subsequent discussions with the Chairman of the Site Plan Review Committee and with the Borough engineer also indicate that respondent used his position improperly. Respondent's actions in all of these dealings constitute a willful violation of the strictures promulgated in *In re Palmisano*, supra.

The impropriety is compounded by the fact that respondent was not simply the legal representative of Maiden Lane Motors, but was also an undisclosed principal of the corporation. The evidence adduced before the Committee, and undisputed before this Board, is that respondent had a significant financial interest in the dealership. He sought to advance this interest in both formal and informal discussions with various Borough officials, including the Mayor of Somerdale. Indeed, it was precisely at those junctures where the corporation faced state and local licensing difficulties that respondent would reveal his financial interests in an attempt to overcome them. It is this personal motive for profit which makes even more grievous the clearly unethical conduct in which this respondent engaged.

Based on the foregoing, the Board finds respondent guilty of violating *DR* 1–102(A)(3), (4) and (6), and *DR* 8–101(A)(1). In reaching this finding, the Board is particularly

concerned that respondent, as an attorney familiar with the zoning ordinance of Somerdale, would attempt to circumvent those regulations by improperly influencing officials charged with their enforcement. The impropriety extends to the financial interests held by respondent in the corporation. At all times he was a principal of the corporation and stood to benefit financially should the corporation prove successful.

The Board therefore recommends that respondent be suspended from the practice of law for a period of one year. The Board further recommends that respondent be required to reimburse the Office of Attorney Ethics for appropriate administrative costs incurred.