IN THE MATTER OF THE APPLICATION OF JAMES H. WHITE FOR A WRIT OF *HABEAS CORPUS.*

Argued April 18, 1955—Decided May 16, 1955.

Mr. *Burrell Ives Humphreys* argued the cause for the defendant-appellant (*Mr. William Rossmoore* on the brief).

Mr. *C. William Caruso*, Legal Assistant to the Prosecutor, argued the cause for the State (*Mr. Charles V. Webb, Jr.*, Prosecutor, attorney).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal by the defendant White from an order of the Essex County Court discharging a writ of *habeas corpus* and denying a motion to correct the sentence imposed upon him. While the appeal was pending in the Appellate Division we certified it on our own motion. *R. R.* 1:10–1(a).

On October 3, 1951 the defendant pleaded *non vult* to an indictment charging him with carrying a concealed weapon and he was sentenced to a term of one year in the county penitentiary, but execution thereof was suspended, he was placed on probation for a period of two years and ordered to pay the sum of $1 per week. While on probation he committed the crime of atrocious assault and battery to which he pleaded *non vult,* and on April 8, 1953 he was sentenced for that offense for a term of two to three years in State Prison. At the time of this sentence the court revoked the probation imposed on him on October 3, 1951, on the indictment for carrying concealed weapons, and imposed a new sentence on that indictment of two to three years in State Prison, the term to run consecutively to the sentence imposed on the atrocious assault and battery indictment.

On September 3, 1954 the defendant attacked the validity of the latter sentence by motion to correct an "illegal" sentence and by application for *habeas corpus*. After hearing, the court denied the motion and discharged the writ, holding

that the court had the power to increase the sentence originally imposed on the carrying concealed weapons charge since the defendant had violated the terms of his probation.

Thus the problem presented is whether upon a violation of one's probation the sentencing judge may increase the original sentence which had been imposed.

The Probation Act, *N. J. S.* 2A:168-4, in dealing with parole violators provides in part:

"* * * Thereupon the court, after summary hearing, may continue or revoke the probation and the suspension of sentence, and may cause the sentence imposed to be executed or impose any sentence which might originally have been imposed."

Our former Supreme Court dealt with the same problem as here presented in *State v. Pascal*, 133 *N. J. L.* 528 (*Sup. Ct.* 1946), and held that on violation of probation the original sentence might be increased and said:

"Finally it is said that the first sentence having been one to two years, the instant sentence of fifteen months to two years is error, but the statute, *supra*, or in our judgment, is a complete answer to this since our law provides that the court, after summary hearing in these circumstances, may continue or revoke the probation and suspension of sentence and may cause the sentence imposed to be executed or impose any sentence which might originally have been imposed."

And *Manda v. State*, 28 *N. J. Super.* 259 (*App. Div.* 1953), was a case in which the defendant had originally been sentenced to the county penitentiary for one year, the sentence being suspended and probation imposed for three years. When the probation was later revoked and the defendant given an indeterminate sentence to Annandale Reformatory, it was held that the court could, under the statute, impose any sentence which might originally have been imposed.

In *Adamo v. McCorkle*, 13 *N. J.* 561 (1953), the *Pascal* case, *supra*, was referred to by *dictum* in the following manner:

"The court held that the Probation Act (*R. S.* 2:199-4) was sufficiently broad to authorize this latter prison sentence though it

was in excess of the original prison sentence upon which execution had been suspended. But see *Roberts v. United States*, 320 *U. S.* 264, 64 *S. Ct.* 113, 88 *L. Ed.* 41 (1943),"

and stated that it expressed no opinion as to the soundness of this particular holding.

Counsel for the defendant insisted on the argument before us that while under the decisions in the *Pascal* and *Manda* cases, *supra*, the instant case would have to be decided against his client that we should reverse those holdings and adhere to the opinion of the United States Supreme Court in *Roberts v. United States, supra*. But we are in disagreement with the majority view in that case as the reasoning applies to our statute. There the defendant was first given a sentence of two years in the penitentiary, the sentence was suspended and probation for five years was imposed. Subsequently the probation was revoked, the original two-year sentence was "set aside" and a new sentence of three years was given. This latter sentence was attacked on the ground that the Federal Probation Act, 18 *U. S. C. A.*, §§ 724–728 did not specifically authorize the court to "set aside" the original fixed sentence and to substitute a new increased sentence. In reaching the conclusion that the sentence was illegal the court said it was unable to infer from the express power to revoke probation or suspension of sentence the further power to set aside the original sentence; that upon a reading of the entire act such an interpretation would be found to produce "irreconcilable conflict." In other words, the decision was based upon the failure of the court to find in the statute any express power to set aside the original sentence, although clearly the statute granted the power to revoke probation and suspension of sentence. Section 1 of the federal act provided that the trial court was authorized "to suspend the imposition or execution of sentence *and* to place the defendant upon probation," and the court said that if the Government's interpretation of the act was accepted this express distinction would be "completely obliterated."

This court is not bound by decisions of the United States Supreme Court in determining the construction and

interpretation of a state statute. Our statute in explicit language grants the authority to the sentencing judge to *"revoke* the probation and the suspension of sentence, and may cause the sentence imposed to be executed *or* impose any sentence which might originally have been imposed." The Federal Probation Act did not specifically state that the judge "may cause the sentence imposed to be executed" in the language of our statute. By what more plain or strong language could the Legislature express its intention that the judge should be authorized to revoke the original sentence, the suspension thereof and the probation and impose any sentence which could be statutorily given for the crime committed? We cannot agree with the contention that the power to set aside the original imposed sentence is not implied in the language of the statute. To accept the reasoning of the Supreme Court in the *Roberts* case it would be necessary to read into the statute this exception "except in a case where a sentence has been imposed and the execution thereof suspended."

Our statute is couched in more explicit language than the Federal Probation Act, for it says the court may revoke probation and suspension of sentence and then directs that the sentence originally imposed be executed *or* impose any other sentence which might have originally been given.

The federal act was silent as to the authority of the court to cause a sentence imposed to be executed. This, was in fact, the basis of the decision in the *Roberts* case, that it could not find in the statute any express power to set aside the original sentence, although clearly the statute granted the power to revoke probation and suspension of sentence. By plain implication what was found lacking in the federal statute is present in *N. J. S.* 2A:168-4. By providing that the judge "may cause the sentence imposed to be executed," the Legislature clearly meant that the statute is applicable to a situation where the original sentencing judge actually imposed a sentence.

The philosophy behind the grant of the power exercised in the instant case is ably set forth in the dissenting opinion of Mr. Justice Frankfurter in the *Roberts* case, *supra* [320

*U. S.* 264, 64 *S. Ct.* 118], and we subscribe to it. He there said:

"Probation is an experimental device serving both society and the offender. It adds the means for exercising wisely that discretion which, within appropriate limits, is given to courts. The probation system was devised to allow persons guilty of anti-social conduct to continue at large but under appropriate safeguards. The hope of the system is that the probationer will derive encouragement and collaboration in his endeavors to remain in society and never serve a day in prison. * * * Thus the probation system is in effect a reliance on the future to reveal treatment appropriate to the probationer.

* * * A convicted person who is given a term sentence and then placed on probation hopes never to spend a day in prison. * * * To treat the pronouncement of a term sentence as a kind of bargain whereby the probationer knows that, no matter what, he cannot be put in prison beyond the term so named is to give a wholly unreal interpretation to the procedure. We certainly should not countenance the notion that a probationer has a vested interest in the original sentence nor encourage him to weigh the length of such a sentence against any advantages he may find in violating his probation. To bind the court to such a sentence is undesirable in its consequences and violative of the philosophy of probation.

* * * The only practical result of the strained reading of the powers of the district courts by the decision today may well lead trial judges generally to place probationers on probation without any tentative sentence. A construction which leads to such a merely formal result, one so easily defeated in practice, should be avoided unless the purpose, the text and the legislative history of the Act converge toward it. The policy of probation clearly counsels against it, and neither the words of the Act nor their legislative history contradict that policy. So far as it is significant on this phase, the legislative history looks against rather than for such an undesirable construction."

Suspension, either of a sentence or of its execution properly leaves a trial court free to commit the criminal to prison if he fails to meet the test or chance of freedom by good behavior during his probationary period.

Appellant next contends that the Probation Act (*N. J. S.* 2*A*:168–4) and *R. R.* 3:7–13 are in conflict and claims, in substance, that the sentence imposed after revocation of probation and suspension of sentence constituted a "change of sentence" which was made beyond the 60-day time limit permitted under *R. R.* 3:7–13, which gives the court the

power to "reduce or change" a sentence within 60 days after judgment, and is therefore unconstitutional under *Winberry v. Salisbury*, 5 *N. J.* 240 (1950).

We find no conflict between the statute under consideration and *R. R.* 3:7–13 and conclude that the *Winberry* case is not applicable here.

The power of the courts to revoke probation and suspension of sentence and to impose a new sentence consequent thereto under *N. J. S.* 2A:168–4 is but an incident to the general administration of the probation laws and has no application to a sentencing after a probation violation, which is, in fact, a new sentence caused by the act of the defendant involving probation and which may occur years after the original sentence was imposed. It would be strange indeed if a new sentence could not be imposed for a violation of probation where violation takes place beyond the 60-day limit provided for in the rule. If this were the case a probationer would merely observe the conditions of his probation for a period of 60 days and thereafter commit any violation he pleased, being assured that the court would be powerless to enforce any sentence originally imposed or to impose a greater sentence.

The statute applies to a situation where there has been a violation of probation, while the rule applies to a situation where the trial judge sees fit to change or reduce the sentence he had imposed of his own volition, which may be done only within 60 days from the date of sentence.

The third and last point made is that the late Judge Naughright, the sentencing judge, never revoked the suspension of execution of the earlier sentence nor set aside the earlier sentence. While this is technically true it is no basis for invalidating the new sentence. The intention of the judge was clear and the mere fact that he failed to carry out this procedural step does not invalidate the new sentence. As a matter of fact, he did, by implication, revoke the suspension of sentence of the original sentence and vacated it.

When the defendant was before the court for a violation of probation and the court revoked the probation, it

had the statutory power to impose any sentence which might have originally been imposed, and it did impose the two- to three-year prison sentence which "might originally have been imposed." It was not technically a re-sentence but one which the court was empowered to impose by virtue of the statute, and its legality cannot be questioned upon the ground that the court did not specifically vacate or set aside the original sentence. *Cf. State v. Cash,* 15 *N. J. Super.* 377 (*App. Div.* 1951).

The judgment below is affirmed. No costs.

WACHENFELD, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN— 6.

*For reversal*—Justice HEHER—1.