526 S.E.2d 539

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael Von RICHARDS, Defendant Below, Appellant.**

No. 26349.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1999.

Decided Dec. 13, 1999.

Concurring Opinion of Chief Justice Starcher Jan. 6, 2000.

**574**

George J. Cosenza, Esq., William O. Merriman, Esq., Cosenza, Underwood & Merriman, Parkersburg, West Virginia, Attorneys for Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

McGRAW, Justice:

This case involves a determination of whether West Virginia's Youthful Offender Act (the "Act"), W. Va.Code §§ 25–4–1 to –12, permits a trial court to increase a defendant's original sentence upon the revocation of probation. Valid policy arguments favoring flexibility in this area notwithstanding, we conclude that the Act expressly forecloses such action.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael Richards pleaded guilty to two counts of aggravated robbery under W. Va. Code § 61–2–12 (1961), and was sentenced in October 1996 to two concurrent 18–year terms of imprisonment. In January 1997, Richards filed a motion for reduction of sentence pursuant to W. Va. R.Crim. P. 35(b), seeking either probation or placement in the youthful offender program as authorized by the Act. The circuit court subsequently set aside Richards' original sentence, and ordered that he be committed to the Anthony Correctional Center for youthful offenders pursuant to W. Va.Code § 25–4–6 (1975).

Richards successfully completed the program at Anthony, and upon return to the circuit court in February 1998, was placed on three years probation. However, less than five months into the probationary period, the State filed a revocation petition alleging seven violations of the conditions of his probation.[1] The circuit court revoked Richards' probation on October 30, 1998, and sentenced him to two concurrent 25–year terms.[2] Richards now challenges the lower court's decision to increase his original sentence.

## II.

## DISCUSSION

The Youthful Offenders Act sets forth a comprehensive set of substantive and procedural rules governing the sentencing of adult-jurisdiction offenders under the age of

---

**1.** The petition alleged that Richards (1) was out after curfew; (2) was in the company of an individual he had been instructed not to associate with; (3) lied to his probation officer; (4) consumed alcohol; (5) used marijuana; (6) was removed due to non-compliance and misbehavior from a substance-abuse treatment that he was required to complete as a condition of probation; and (7) refused to attend an additional treatment program at a halfway house designated by his probation officer.

**2.** The circuit court chose the 25–year term apparently because it was the maximum sentence that Richards' co-defendant could receive under his plea agreement.

twenty one. The Act grants discretionary authority to the circuit courts to suspend imposition of sentence, and place a qualifying defendant in a program of rehabilitation at a youthful-offender center. Following successful completion of the program, the circuit court has a mandatory obligation to place the defendant on probation. At all times relevant to this case, the Act specified that in the event probation is subsequently revoked, the defendant "shall be given the sentence he would have originally received had he not been committed to the center and subsequently placed on probation." W. Va.Code § 25–4–6 (1975).[3] Richards contends that this provision prohibits a court from increasing a defendant's original sentence in the event probation is revoked.[4] We agree with Richards that the circuit court's final sentencing action violated § 25–4–6.

■ "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va.

---

**3.** Prior to its recent amendment, W. Va.Code § 25–12–6 provided as follows:

> The judge of any court with original criminal jurisdiction may suspend the imposition of sentence of any male youth convicted of or pleading guilty to a criminal offense, other than an offense punishable by life imprisonment, who has attained his sixteenth birthday but has not reached his twenty-first birthday at the time of the commission of the crime, and commit him to the custody of the West Virginia commissioner of public institutions to be assigned to a center. The period of confinement in the center shall be for a period of six months, or longer if it is deemed advisable by the center superintendent, but in any event such period of confinement shall not exceed two years. If, in the opinion of the superintendent, such male offender proves to be an unfit person to remain in such a center, he shall be returned to the court which committed him to be dealt with further according to law. In such event, the court may place him on probation or sentence him for the crime for which he has been convicted. In his discretion, the judge may allow the defendant credit on his sentence for time he has spent in the center.

> When, in the opinion of the superintendent, any boy has satisfactorily completed the center training program, such male offender shall be returned to the jurisdiction of the court which originally committed him. He shall be eligible for probation for the offense with which he is charged, and the judge of the court shall immediately place him on probation. *In the event his probation is subsequently revoked by the judge, he shall be given the sentence he would have originally received had he not been committed to the center and subsequently placed on probation.* The court shall, however, give the defendant credit on his sentence for the time he spent in the center.

> Any male youth between the ages of ten and eighteen committed by the judge of any court of competent jurisdiction for any of the causes, and in the manner prescribed in article five, chapter forty-nine of this code, may, if such youth is or has attained the age of sixteen, be placed in a center or transferred from the industrial school or like facility to a center and back to such facility by the commissioner of public institutions, if he deems it proper for the youth's detention and rehabilitation.

> (Emphasis added.)

This section was effectively rewritten during the recent legislative session, *see* 1999 W. Va. Acts ch. 64, and now provides, in relevant part, that "[i]n the event the offender's probation is subsequently revoked, the judge shall impose the sentence the young adult offender would have originally received had the offender not been committed to the center and subsequently placed on probation." The recent amendments to § 25–12–6 did not substantially alter the language at issue in this case.

**4.** Richards contends that the circuit court's action also violates W. Va.Code § 62–12–10 (1955), which in relevant part states that when a defendant violates the terms of probation, "the court or judge may revoke the suspension of imposition or execution of sentence, impose sentence if none has been imposed, and order that sentence be executed." He points to the United States Supreme Court's decision in *Roberts v. United States*, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943), where the Court held that an analogous federal statute prohibited increasing a previously imposed sentence, the execution of which had been suspended. While this Court has previously indicated that the Youthful Offenders Act and more general statutes governing probation (like § 62–12–10) should be read and considered together, *see State v. Reel*, 152 W.Va. 646, 651, 165 S.E.2d 813, 816 (1969), we have also stated that "the two statutory schemes do not coincide in all areas and are, no doubt, the embodiment of separate legislative purposes," *State v. Martin*, 196 W.Va. 376, 380 n. 3, 472 S.E.2d 822, 826 n. 3 (1996) (per curiam). We therefore need not reach this issue, since even if there were some discrepancy between the two statutes, § 25–4–6 is the more specific and thus controlling law on this subject. *See* Syl. pt. 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled.").

138, 459 S.E.2d 415 (1995). Thus, because this case turns exclusively upon an interpretation of the legal requirements of § 25–4–6, we undertake plenary review of the circuit court's action.

■■■ As we stated in Syllabus point one of *Sowa v. Huffman*, 191 W.Va. 105, 443 S.E.2d 262 (1994), " '[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." In this case, the language of § 25–4–6 clearly precludes a court from imposing a harsher sentence based upon conduct post-dating the defendant's commitment to the youthful offender program. The use of the word "shall" makes the statute's requirement mandatory rather than directory. *See* Syl. pt. 3, *Bounds v. State Workmen's Compensation Comm'r*, 153 W.Va. 670, 172 S.E.2d 379 (1970) (" 'The word "shall", in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.' ") (quoting Syl. pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969)); Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982).

We confronted a similar question in *State v. Patterson*, 170 W.Va. 721, 296 S.E.2d 684 (1982). In *Patterson*, the defendant pleaded guilty to shoplifting, and was sentenced to one-to-ten years imprisonment. Sentence was later suspended and the defendant committed to the youthful offender program pursuant to the Act. Like Richards in the present case, the defendant in *Patterson* successfully completed the program and was placed on probation; however, after he later pleaded guilty to shoplifting and petit larceny, probation was revoked and the original sentence executed. This Court subsequently

upheld the circuit court's refusal to once again sentence the defendant as a youthful offender, stating that "W. Va.Code, 25–4–6, does not allow a trial court discretion to impose any less than the original sentence when a male defendant, who has served at a youth correctional facility, violates his probation agreement." Syllabus, *Patterson, supra.* See also *State v. Martin*, 196 W.Va. 376, 472 S.E.2d 822 (1996) (per curiam) (holding that mandatory imposition of original sentence pursuant to § 25–4–6 following revocation of probation did not violate proportionality requirement of W. Va. Const. art. III, § 5).

The reasoning of *Patterson* applies in the present case: In the event probation is revoked following a defendant's successful completion of the youthful offender program, a circuit court has no discretion under § 25–4–6 to do anything but impose the sentence that was, or otherwise would have been, originally handed down. While our previous cases involving this subject have dealt only with the circumstance of where a defendant seeks a lesser sentence than originally imposed, the rigid command of § 25–4–6 applies with equal force in the present context. At the very least, the statute removes as a permissible sentencing factor conduct that follows a defendant's successful completion of the youthful offender program and placement on probation.[5]

The State advances sound policy arguments justifying the circuit court's action in the present case, asserting that "if a defendant is made aware that his imposed but suspended sentence may be increased should he violate the terms and conditions of his probation, he will be less likely to violate these terms than if he knows that a probation violation will result only in incarceration for the term of the suspended sentence." As

---

**5.** The circuit court in this case initially imposed a sentence, which was later vacated when the court granted defendant's motion for reduction of sentence under W. Va. R.Crim. P. 35(b). There may, of course, be circumstances where imposition of sentence is suspended under the Act, and the defendant receives no initial sentence prior to the revocation of probation. (Indeed, this is the normal mode of disposition as prescribed by the Act.) In these cases, § 25–4–6 precludes a sentencing court from considering conduct that follows a defendant's placement in the youthful offender program. The Court notes, however, that the Act imposes no such limitation in situations where a defendant is returned to the circuit court as unfit for inclusion in the program. We can only surmise that the Legislature, in creating this disparity, intended to provide an incentive for individuals to complete the program of rehabilitation.

the Oregon Supreme Court similarly observed, "[t]he possibility of an increased punishment is a deterrent to violation of probation. It is in the best interest of all the probationer, law enforcement agencies, and the public that probationers do not violate the terms of probation." *State v. Holmes,* 287 Or. 613, 619, 601 P.2d 1213, 1215 (1979); *see also Smith v. State,* 261 Ind. 510, 514–15, 307 N.E.2d 281, 283 (1974) ("[I]f courts are to be encouraged to give suspended sentences, they must be given the latitude allowed within the plain wording of the statute to insure that a defendant accepting the terms of probation will do so with full realization of the gravity of the consequences of the violation of that probation."). However compelling this argument may be, the wording of § 25–4–6 simply does not support it.[6]

■ We have previously indicated that "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters." *Hutchison v. City of Huntington,* 198 W.Va. 139, 150, 479 S.E.2d 649, 660 (1996) (citation and internal quotation marks omitted). Although it would be reasonable to speculate that the Legislature's primary intent in wording § 25–4–6 as it did was merely to ensure that predictable repercussions would ensue following a defendant's violation of probation, our literal interpretation of the statute in this instance does not produce such illogical or absurd consequences so as to compel some alternative construction. " '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' " *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v.*

*Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992)). As we have stressed on numerous occasions, "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]" *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). *See also* Syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem. Hosp.,* 196 W.Va. 326, 472 S.E.2d 411 (1996) ("If the language of an enactment is clear and within the constitutional authority of the lawmaking body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery.").

■ Consequently, we hold that where a criminal defendant has been placed on probation after successfully completing a program of rehabilitation under the Youthful Offenders Act, and such probation is subsequently revoked, the circuit court has no discretion under § 25–4–6 to impose anything other than the sentence that the defendant would have originally received had he or she not been committed to a youthful offender center and subsequently placed on probation. The circuit court's action in increasing Richards' sentence upon the revocation of his probation was therefore erroneous.

## III.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Wood County is hereby reversed and remanded, and the circuit court

---

**6.** The State also cites several cases from other jurisdictions in support of its argument that § 25–4–6 can be construed to permit imposition of a harsher sentence upon revocation of probation. However, these cases involved markedly different statutory language, which clearly authorize such action: *People v. Turner,* 233 Ill.App.3d 449, 599 N.E.2d 104, 174 Ill.Dec. 558 (1992) (construing statute providing that trial court "may impose any other sentence that was available ... at the time of initial sentencing"); *Smith v. State,* 261 Ind. 510, 307 N.E.2d 281 (1974) (statute providing that "the court may revoke the

probation or the suspension of sentence and may impose any sentence which might originally have been imposed"); *Hord v. Commonwealth,* 450 S.W.2d 530 (Ky.1970) (statute providing that upon revocation of probation a trial court "may impose any sentence which might have been imposed at the time of conviction"); *In re Application of White,* 18 N.J. 449, 114 A.2d 261 (1955) (statute providing that upon revocation a court "may cause the sentence imposed to be executed or impose any sentence which might originally have been imposed").

is directed to sentence defendant Richards on the two aggravated robbery offenses to two 18-year terms of imprisonment, to be served concurrently.

Reversed and remanded with directions.

Justice SCOTT did not participate in the decision in this case.

Judge ROBERT B. STONE, sitting by temporary assignment.

STARCHER, Chief Justice, concurring:

(Filed Jan. 6, 2000)

I agree fully with the majority's legal reasoning. But I write separately because I have a hard time understanding why it made sense to sentence this young defendant to 18 years in prison at the taxpayers' expense.

The trial judge originally thought that Michael Von Richards was a good enough risk to qualify to be sent to Anthony Center. There he showed that he could comply with the program and was placed on probation. Unfortunately, the defendant did not do well on probation, but his offenses that violated his probation were non-violent.

Of course, I am not the sentencing judge. And the sentencing judge is entitled to substantial deference. But my impression is that the defendant should have been put in jail for 6 or 8 months, or so, and tried again on probation.

Where a court has discretion, as in this case, imposing long, long prison sentences like 18 years generally should be reserved for people who are so dangerous that we need to be protected from them. Our West Virginia taxpayers ought not be required to unnecessarily house non-violent offenders at a cost of $20,000 per year. Perhaps this was the case with Michael Von Richards, but it doesn't seem that way to me from the record.