# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### September 2023 Term

_____

No. 21-0904

_____

**FILED**
**October 30, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent,**

**V.**

**DAVID EUGENE HALL,**
**Defendant Below, Petitioner.**

_____

**Appeal from the Circuit Court of Mercer County**
**The Honorable William J. Sadler, Judge**
**Criminal Action No. 20-F-157**

**AFFIRMED**

_____

**Submitted: September 12, 2023**
**Filed: October 30, 2023**

Colin M Cline, Esq.
Colin M. Cline, Attorney at Law
Princeton, West Virginia
Attorney for the Petitioner

Patrick Morrisey, Esq.
Attorney General
William E. Longwell, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

**JUSTICE BUNN delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.     "The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

2.     "The word 'shall' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syllabus point 2, *Terry v. Sencindiver*, 153 W. Va. 651, 171 S.E.2d 480 (1969).

3.     "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus point 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

4.     "To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice." Syllabus point 9, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

**Bunn, Justice:**

Petitioner David Eugene Hall appeals the Circuit Court of Mercer County's August 9, 2021 order sentencing him to ten to twenty-five years imprisonment after he pleaded guilty to second-degree sexual assault, in violation of West Virginia Code § 61-8B-4.[1] Mr. Hall raises two issues on appeal relating to his sentencing. He chiefly complains that the circuit court failed to consider the mandatory "mitigating circumstances" listed in West Virginia Code § 61-11-23(c). He also argues that his sentence is constitutionally disproportionate.

Before Mr. Hall received the appealed sentence, the circuit court's first disposition required that he complete the sex offender program at Sam Purdue Juvenile Center ("Sam Purdue"). After Sam Purdue discharged him due to his behavior, the court sentenced Mr. Hall to ten to twenty-five years imprisonment, suspended his sentence, then assigned him to the Anthony Correctional Center ("Anthony Center") for young adult offenders for at least six months but not more than two years. Mr. Hall was discharged from the Anthony Center due to his misconduct a few months later. After that discharge, the circuit court ordered that he complete the sentence he now appeals. We affirm the circuit court because, as explained below, while the court did not explicitly discuss the mitigating circumstances listed in West Virginia Code § 61-11-23(c) before ordering the

---

[1] The circuit court resentenced Mr. Hall for purposes of appeal and entered the resentencing order on October 6, 2021.

1

final sentence, this error was not prejudicial to Mr. Hall. Furthermore, his sentence was not unconstitutionally disproportionate.

# I.

## FACTUAL AND PROCEDURAL HISTORY

In late 2019, seventeen-year-old Mr. Hall sexually assaulted his eleven-year-old half-sister, and she became pregnant. In early February 2020, during an investigation by the West Virginia State Police, the State sought his emergency detention as a juvenile. After a hearing, the Mercer County Circuit Court found that probable cause existed to find that Mr. Hall committed first-degree sexual assault, a violation of West Virginia Code § 61-8B-3, and detained him pursuant to the West Virginia Rules of Juvenile Procedure. Eleven days later, the court held a preliminary hearing on a delinquency petition that alleged Mr. Hall committed sexual assault and incest. The court found that probable cause existed to believe that Mr. Hall was a juvenile delinquent.

On July 2, 2020, the circuit court held a hearing on the State's motion to transfer the case to the adult criminal jurisdiction of the circuit court, pursuant to West Virginia Code § 49-4-710(d).[2] During the hearing, the court noted that Mr. Hall underwent

---

[2] The relevant portion of West Virginia Code § 49-4-710(d) provides that "[t]he court shall transfer a juvenile proceeding to criminal jurisdiction if there is probable

2

a competency evaluation, and he was competent. The court found (1) that Mr. Hall was at least fourteen years old; and (2) probable cause to believe that he committed first-degree sexual assault and incest. Recognizing that the transfer was nondiscretionary pursuant to West Virginia Code § 49-4-710(d)(1), the court transferred the case to its criminal jurisdiction. Still, during the hearing, the court acknowledged, and the State agreed, that the sentencing options in a transferred case included a juvenile disposition.[3] At the conclusion of the hearing, the court ordered that Mr. Hall remain at Sam Purdue, the juvenile facility where he was receiving counseling and therapy.

In August 2020, Mr. Hall waived indictment by a grand jury and entered a guilty plea to an information charging him with second-degree sexual assault, a violation of West Virginia Code § 61-8B-4 that carries a statutory penalty of ten to twenty-five years imprisonment. The plea agreement between the State and Mr. Hall contained a provision where the parties recommended that his sentence be ten to twenty-five years imprisonment, suspended, and that the court sentence him to Sam Purdue for full completion of the sex offender program.[4] The parties also recommended that, after his successful completion of

_____

cause to believe that: (1) The juvenile is at least fourteen years of age and has committed the crime of . . . sexual assault in the first degree under [W. Va. Code § 61-8B-3.]"

[3] *See* W. Va. Code § 49-4-714(g).

[4] The parties did not include the plea agreement in the appendix record, but defense counsel summarized the plea agreement on the record during the plea hearing, and the appendix record included the plea hearing transcript.

the program, the court give Mr. Hall probation and that Mr. Hall comply with sex offender registration requirements. The parties agreed that the court could determine whether to require extended supervision. At the hearing, the circuit court ensured Mr. Hall understood that, while the State made recommendations, the plea agreement did not bind the court and that Mr. Hall could receive a sentence of ten to twenty-five years imprisonment.

During the plea hearing, the court inquired whether Mr. Hall understood his rights and the consequences of his plea. Mr. Hall agreed that he did, and his counsel explained that Mr. Hall's IQ was 65, but that he was competent and "not on any drugs."[5] Defense counsel also requested a presentence investigation. The court accepted the guilty plea, recognizing that Mr. Hall committed the offense while a juvenile. The court directed that, before sentencing, Mr. Hall begin the sex offender treatment program at Sam Purdue. After ordering a sex offender evaluation, the court contemplated that Mr. Hall would be at Sam Purdue for a couple of months, then the court would "formally put him on probation with the condition he completes the program there," and, in the meantime, the probation office would complete the presentence investigation.

---

[5] An evaluation that occurred before the plea hearing that measured Mr. Hall's IQ also determined that he was competent. A later evaluation during the proceedings determined that Mr. Hall's IQ was 70.

The completed presentence investigation report included information that Mr. Hall's mother, who was also the victim's mother, "continued to fully support the position of her son as opposed to her much younger daughter . . . ." It also noted that the sexual offender evaluation concluded that Mr. Hall "consistently denied the offense conduct throughout the entire process until it was clear that DNA evidence indicated otherwise."

In late October 2020, the court held a hearing where the State explained that the parties agreed to the disposition that Mr. Hall complete the program at Sam Purdue, then receive probation and a period of extended supervised release at the court's discretion. The court noted that it reviewed the presentence investigation report. Mr. Hall's attorneys explained that they reviewed the presentence investigation report and the sex offender evaluation with Mr. Hall and that he understood and was ready to proceed. Counsel also remarked that because of issues with his family background, Mr. Hall took time to understand the severity of what he had done, but "he's now on his way to understanding." Following the parties' recommendation, the court ordered Mr. Hall to complete the program at Sam Purdue but explained that Mr. Hall would return to court later to discuss his sex offender registration and extended supervision requirements. The court acknowledged that because Mr. Hall was a juvenile when he committed the offense, the court could proceed with that juvenile disposition and scheduled a hearing for a progress report in late January 2021. The court then entered an order on November 19, 2020,

requiring Mr. Hall to complete the sex offender program at Sam Purdue and deferring his disposition pending the completion of that program.

However, Mr. Hall was unable to complete the program at Sam Perdue. During the previously scheduled January 2021 hearing, the court noted that Sam Purdue was seeking Mr. Hall's discharge from the program because he was non-compliant with treatment. Because of this non-compliance, Mr. Hall was ultimately discharged from the juvenile facility.

On March 1, 2021, the court held another hearing in light of the discharge. The State requested that Mr. Hall receive the maximum sentence for the crime of second-degree sexual assault, ten to twenty-five years imprisonment, because he failed to complete the Sam Purdue program, which was his chance to address his behavior, and the "egregious underlying circumstances of this case." Mr. Hall's counsel instead requested placement at the Anthony Center, a young adult offender center.[6] Bringing the court's attention to the sexual offender evaluation, Mr. Hall's counsel argued that Mr. Hall's psychological age

---

[6] Article Four of Chapter Twenty-five of the West Virginia Code governs centers for housing young adult offenders. These centers are for convicted young adult offenders "who are amenable to discipline other than in close confinement," and their purpose includes giving a "better opportunity to young adult offenders for reformation and encouragement of self-discipline." W. Va. Code § 25-4-1. Pursuant to West Virginia Code § 25-4-6, a court may suspend the imposition of a young adult's sentence and commit the young adult to be assigned to a center for a period of "not less than six months but not more than two years" to complete the program's requirements.

was younger than his actual age and that his mother "brainwash[ed]" him. Counsel further urged the court to send him to the Anthony Center for more rehabilitative measures. Mr. Hall also requested placement at the Anthony Center when he directly addressed the court.

In determining Mr. Hall's March 2021 sentence, the circuit court recognized that the case began as a juvenile case, that Mr. Hall turned eighteen and was an adult, and that Mr. Hall was not successful at Sam Purdue. The circuit court explained that it reviewed the psychologist's report and the original presentence investigation report, concluding that "due to his age and his IQ, I do think Anthony [Center] might would be an appropriate placement for him." The court adjudged Mr. Hall guilty of second-degree sexual assault, sentenced him to ten to twenty-five years imprisonment, then suspended the sentence to place him in the Young Adult Offender Program at the Anthony Center for at least six months but not more than two years. The court explained to Mr. Hall that this was a program for young adult offenders, not juveniles, "so you will be in a prison with other adults." The court described the program to Mr. Hall as "designed to give you certain benefits, educational programming, vocational programming that's not available to you in the regular adult prison system." Urging Mr. Hall to "take advantage of this," the sentencing court explained that "[i]f you violate those rules, you get kicked out of the program and you come back down here. If that happens, I have no choice but to send you to regular adult prison for you to do - - for you to do your 10 to 25, all right." The court remarked that "the best thing for you to do when you get there is to make sure you

understand the rules and make sure you abide by the rules." Finally, the court reiterated that if Mr. Hall got "kicked out," then "the only choice I got when you come back is go to big boy's prison, so to speak." Neither the State nor Mr. Hall's defense attorneys specifically asked the court to consider the mitigating circumstances set forth in West Virginia Code § 61-11-23(c) or otherwise objected to the court's disposition.

In mid-July 2021, Mr. Hall was returned to the court from the Anthony Center as "unfit." At a hearing before the circuit court, the Anthony Center's superintendent testified regarding Mr. Hall's disciplinary record and concluded that he did not think that returning Mr. Hall to the Anthony Center would further benefit him.[7] While Mr. Hall and his attorney requested that he have another chance at the Anthony Center, the court found that he was unfit for the Anthony Center and scheduled another hearing. The court specifically noted that it wanted to reread Mr. Hall's sex offender evaluation.

On July 21, 2021, the court held yet another hearing. The State again requested that the court sentence Mr. Hall to ten to twenty-five years imprisonment, arguing that Mr. Hall had an opportunity to go to Sam Purdue, then the Anthony Center,

---

[7] Pursuant to West Virginia Code § 25-4-6, if the warden believes that a young adult offender is unfit to remain in the center, the offender is returned to the committing court "to be dealt with further according to law." The statute provides that "the offender is entitled to a hearing before the committing court to review the warden's determination." W. Va. Code § 25-4-6.

8

but he squandered both of those opportunities. Mr. Hall's attorneys noted the contents of the reports before the court, contending that Mr. Hall had limited cognitive abilities and difficulty in taking responsibility, which was apparent from his behavior at both Sam Purdue and the Anthony Center. Counsel requested that the court be lenient and give him "some sort of alternative sentencing," but was not specific in the request.

When the court discussed Mr. Hall's sentence, it noted that this case had a long history and started as a juvenile case, and everyone in the courtroom, "even the State to a certain extent, recognized the fact that Mr. Hall was . . . a juvenile" when he committed the crime and "gave him every chance in the world not to have to go to the penitentiary." The court explained:

> We've bent over backwards to keep you out of the penitentiary, Mr. Hall. You had a chance to basically get probation if you completed the juvenile sex offender treatment program. You couldn't do it. Got kicked out. Okay. Well let's try the young adult offender program where you go to - - you go to the correctional facility for a period of six months to two years, you complete that program, you get probation. All right. Couldn't do that.

The court sentenced him to ten to twenty-five years imprisonment. Again, neither party expressly asked the court to consider the mitigating factors in West Virginia Code § 61-11-23(c). This appeal followed.

## II.

## STANDARD OF REVIEW

"The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

## III.

## DISCUSSION

While he did not raise these allegations below, Mr. Hall now asserts two assignments of error, alleging both statutory and constitutional violations regarding his sentencing. He first contends that the circuit court erred when sentencing him by failing to consider the mandatory mitigating factors listed in West Virginia Code § 61-11-23(c). He also argues that his sentence was disproportionate and in violation of the proportionality clauses of the West Virginia and United States Constitutions due to his age and mental capacity.

### A. West Virginia Code § 61-11-23(c)

Both parties agreed that West Virginia Code § 61-11-23(c) applied to the court's determination of Mr. Hall's sentence. This section applies after a court transfers a juvenile delinquency case from juvenile jurisdiction to adult criminal jurisdiction and

10

requires the court to consider certain mitigating circumstances.[8] In a case that originates under the juvenile jurisdiction of the court, and is transferred, the court may impose a juvenile disposition rather than a criminal sentence. *See* W. Va. Code § 49-4-714(g) (regarding the disposition of juvenile delinquents and providing that "[n]otwithstanding any other provision of this code to the contrary, if a juvenile charged with delinquency under this chapter is transferred to adult jurisdiction and there tried and convicted, the court may make its disposition in accordance with this section in lieu of sentencing the person as an adult").

We turn now to the procedure of sentencing a person who committed a crime as a juvenile. West Virginia Code § 61-11-23 concerns, as explained in its title, "[p]unishment for juvenile convicted as an adult." Subsection (c) directs that a sentencing court "shall consider" certain mitigating circumstances when determining an appropriate

---

[8] Sections 701 through 735 in Article Four of Chapter Forty-Nine of the West Virginia Code address juvenile delinquency, alongside the West Virginia Rules of Juvenile Procedure. Transfers from the juvenile jurisdiction of the circuit court to adult criminal jurisdiction are governed by West Virginia Code § 49-4-710. Some transfers to criminal jurisdiction are mandatory upon motion by the State. *See* W. Va. Code § 49-4-710. Relevant to this case, the statute provides that "[t]he court shall transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe that: (1) The juvenile is at least fourteen years of age and has committed . . . the crime of sexual assault in the first degree under [W. Va. Code § 61-8B-3.]" W. Va. Code § 49-4-710(d)(1).

11

sentence for a person who committed a felony as a juvenile, was transferred to the adult criminal jurisdiction of the court, and was found guilty of the crime. Subsection (c) reads:

> In addition to other factors required by law to be considered prior to the imposition of a sentence, in determining the appropriate sentence to be imposed on a person who has been transferred to the criminal jurisdiction of the court pursuant to § 49-4-710 of this code and who has been subsequently tried and convicted of a felony offense as an adult, the court shall consider the following mitigating circumstances:
> (1) Age at the time of the offense;
> (2) Impetuosity;
> (3) Family and community environment;
> (4) Ability to appreciate the risks and consequences of the conduct;
> (5) Intellectual capacity;
> (6) The outcomes of a comprehensive mental health evaluation conducted by a mental health professional licensed to treat adolescents in the State of West Virginia: Provided, That no provision of this section may be construed to require that a comprehensive mental health evaluation be conducted;
> (7) Peer or familial pressure;
> (8) Level of participation in the offense;
> (9) Ability to participate meaningfully in his or her defense;
> (10) Capacity for rehabilitation;
> (11) School records and special education evaluations;
> (12) Trauma history;
> (13) Faith and community involvement;
> (14) Involvement in the child welfare system; and
> (15) Any other mitigating factor or circumstances.

W. Va. Code § 61-11-23(c). Here, both parties agree that West Virginia Code § 61-11-23(c) applies to Mr. Hall's case, as the case originated as a juvenile matter and the court transferred it to adult criminal jurisdiction pursuant to West Virginia Code § 49-4-710 upon motion by the State.

12

Having explained how § 61-11-23(c) applies to Mr. Hall's sentencing, we now turn to the statute's requirements and whether the sentencing court met its obligations. Because the statute directs that the sentencing court "shall" consider the listed mitigating circumstances, when the court transfers a person from juvenile jurisdiction to adult criminal jurisdiction, a court must consider those mitigating circumstances at sentencing. "The word 'shall' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syl. pt. 2, *Terry v. Sencindiver*, 153 W. Va. 651, 171 S.E.2d 480 (1969). *Accord* Syl. pt. 3, *State v. Richards*, 206 W. Va. 573, 526 S.E.2d 539 (1999).

Furthermore, a sentencing court must place its consideration of the mandatory factors into the record, either by order or on the record at a hearing. Typically, we provide sentencing courts with discretion. *See* Syl. pt. 1, in part, *Lucas*, 201 W. Va. 271, 496 S.E.2d 221. Still, appellate review "depends on appellate courts being able to access a circuit court's acts of discretion from the record." *State v. Grady*, 734 N.W.2d 364, 373 (Wis. 2007). We have obligated courts to consider other sentencing requirements on the record to ensure that a circuit court complied with a Rule of Criminal Procedure. *See State ex rel. Aaron v. King*, 199 W. Va. 533, 539-40, 485 S.E.2d 702, 708-09 (1997); Syl. pt. 3, *id.* (regarding Rule of Criminal Procedure 32 and requiring that a circuit court, "without exception, determine on the record that a defendant has had the opportunity to read and discuss the presentence investigation report with his counsel," and explaining that

13

"the record should demonstrate that such opportunity has been provided or extended to a defendant").[9] A circuit court satisfies a statutory requirement that it "shall consider" certain factors when making a sentencing decision where the sentencing hearing demonstrates that the court "actually considered" the factors "on the record" or states its consideration in an order. *See Grady*, 734 N.W.2d at 375 (regarding the application of Wisconsin's sentencing guidelines). While the circuit court need not expressly consider each factor by name or quote the statute, it must demonstrate that it was aware of West Virginia Code § 61-11-23(c)'s requirement that it consider certain mitigating circumstances when sentencing a person who committed a crime as a juvenile and whose case was transferred to adult criminal jurisdiction. The court may satisfy this requirement by placing its consideration either on the record during the hearing or in its sentencing order. *See* Syl., *State v. Turner*, 833 P.2d 921 (Kan. 1992) (holding that when *denying* a presumptive, more lenient sentence, the court must consider specific factors, needs, and aggravating circumstances, and while the court need not "address each factor expressly" or "quote the statutes," still "the sentencing record must show that the trial court was aware of the

---

[9] *See also* Syl. pt. 5, *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991) (requiring a circuit court make a record before disqualifying an attorney because the representation may conflict with the Rules of Professional Conduct, noting "this Court will not review a circuit court's order disqualifying a lawyer unless the circuit court's order is based upon an adequately developed record," and explaining that if the record is inadequate, the Court "under appropriate circumstances, may remand a case to the circuit court for development of an adequate record").

presumptive status" of the more lenient sentence, and "that it did consider (a) the sentencing factors, (b) individual treatment, and (c) the aggravating circumstances").[10]

Here, while the court certainly discussed certain factors that are mitigating factors under the statute, such as Mr. Hall's IQ and his age at the time of the offense, the court made no record that it had West Virginia Code § 61-11-23(c)'s directive in mind in any of the multiple hearings and related orders. Still, Mr. Hall did not object to or otherwise bring attention to the court's failure to address the mitigating factors found in West Virginia Code § 61-11-23(c).

When a defendant raises an error on appeal yet does not object to the error before the lower court, as is the case here, we may determine whether the plain error doctrine requires reversal. *State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995) ("The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made."). "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights;

---

[10] *See also State v. Bonfiglio*, 295 P.3d 948, 951 (Ariz. 2013) (reviewing a sentence where a court imposed an aggravated, higher sentence and explaining that trial courts should "clearly articulate at sentencing the factors the judge considered to be aggravating or mitigating and explain how those factors led to the sentence imposed" (internal quotations and alterations omitted)).

and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *Miller*, *id.*

Pursuant to *Miller*, under the first prong of the plain error doctrine, there must be an error. *Id.* As we have explained the statutory requirement that a sentencing court acknowledge and consider the mitigating factors in West Virginia Code § 61-11-23(c), the circuit court's failure to do so was error. Under the second prong of the plain error doctrine, such an error is now plain, as we have clarified a circuit court's requirement to consider the mitigating circumstances on the record. *See* Syl. pt. 6, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998) (explaining that an error can become plain on appeal because the applicable law has been clarified).

Our inquiry ends at the third prong of the plain error doctrine, however, as we find that Mr. Hall cannot show that the error affected his substantial rights.[11] "To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice." Syl. pt. 9, in part, *State v. Miller*, 194

---

[11] Because Mr. Hall cannot show the error affected his substantial rights, we need not address the fourth prong of the plain error doctrine. *See State v. Craft*, 200 W. Va. 496, 503 n.10, 490 S.E.2d 315, 322 n.10 (1997) (resolving case on the substantial rights prong of the plain error doctrine); *State v. Marple*, 197 W. Va. 47, 54, 475 S.E.2d 47, 54 (1996) (same).

W. Va. 3, 459 S.E.2d 114. To show substantial prejudice, Mr. Hall must show that the outcome of his case would have been different had the sentencing court properly considered the mitigating circumstances listed in the statute. *See State v. Craft*, 200 W. Va. 496, 503, 490 S.E.2d 315, 322 (1997) (determining, under the third prong of the plain error doctrine, that an error at sentencing "did not affect the outcome of the sentencing proceedings below"). While the sentencing court failed to specifically address the mitigating circumstances listed in West Virginia Code § 61-11-23(c), Mr. Hall cannot meet his burden to demonstrate that the failure prejudiced him. Certainly, the sentencing court did not expressly invoke the statute. Still, Mr. Hall suffered no prejudice from this failure as he was sentenced exactly as he requested when he was sent to Sam Purdue and to the Anthony Center before the circuit court imposed his final sentence of ten to twenty-five years imprisonment.

Throughout the proceedings, the court sought information regarding Mr. Hall, demonstrated its awareness of Mr. Hall's personal characteristics, and considered his specific circumstances during the many hearings. Even before any disposition or sentencing hearings, at the plea hearing the court recognized Mr. Hall's juvenile status when he committed the offense and sent him to Sam Purdue for treatment. The court acknowledged reading documents regarding Mr. Hall's circumstances, including the presentence investigation report and the sex offender evaluation. At the initial disposition, where the court ordered Mr. Hall to complete the sex offender program at Sam Purdue

17

rather than imposing a term of imprisonment, the court explained that it reviewed the presentence investigation report. In March 2021, at the hearing where the court sent Mr. Hall to the Anthony Center, the court heard counsel's argument that Mr. Hall's family background made it difficult for him to understand the severity of his actions. The court again leniently sentenced him by suspending his ten to twenty-five year sentence and sending him to the Anthony Center, pursuant to his request. In imposing the Anthony Center sentence of six months, but no more than two years, the court rejected the State's request for the statutory sentence of ten to twenty-five years imprisonment. The court again specifically acknowledged reading the report from the psychologist who completed the sex offender evaluation, as well as the presentence report. The court explained, on the record, that "due to his age and his IQ, I do think Anthony [Center] might would be an appropriate placement for him." By sending him to the Anthony Center, the court also attempted to provide Mr. Hall with opportunities for rehabilitation, directly addressing him regarding the benefits he could receive at the Anthony Center, including educational and vocational programs.

While the sentencing court ultimately sentenced Mr. Hall to a period of imprisonment of ten to twenty-five years, the court provided Mr. Hall many opportunities to avoid his ultimate sentence. Although it did not properly acknowledge its consideration of the mitigating circumstances on the record at any of the many hearings or in its orders, the court took into account Mr. Hall's situation, intellectual capacity, and other factors

when providing him with the Sam Purdue and Anthony Center outcomes before sentencing him to ten to twenty-five years imprisonment. Twice, Mr. Hall received the disposition he sought: placement at Sam Purdue, then placement at the Anthony Center, and he failed to successfully complete either program. After reviewing the opportunities provided to Mr. Hall before his ultimate sentence, this Court finds that Mr. Hall cannot show his substantial rights were affected by the failure of the circuit court to acknowledge and consider the mitigating circumstances listed in West Virginia Code § 61-11-23(c). Mr. Hall cannot show that he would have received a more lenient sentence had the sentencing court properly complied with the mandate of West Virginia Code § 61-11-23(c), and we will not disturb the circuit court's sentence.

### B. Mr. Hall's Disproportionality Claim

We now turn to Mr. Hall's argument that the circuit court's sentence of ten to twenty-five years imprisonment for second-degree sexual assault was disproportionate, violating the West Virginia and United States Constitutions, due to his "diminished mental capacity" and age. "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties

shall be proportioned to the character and degree of the offence.'" Syl. pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980). We have explained that

> [p]unishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

Syl. pt. 5, *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983). Typically, we limit proportionality reviews to sentences "where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). When reviewing a sentence for proportionality, the Court uses two tests: subjective and objective. *See, e.g., State v. Gibbs*, 238 W. Va. 646, 659, 797 S.E.2d 623, 636 (2017).

Mr. Hall argues that, because the sentencing court did not consider the mitigating factors listed in West Virginia Code § 61-11-23(c), the court based his sentence on impermissible or improper factors, and the sentence was therefore disproportionate.[12] He does not cite any impermissible factors considered by the sentencing court, instead focusing his argument on the court's failure to consider the mitigating circumstances in West Virginia Code § 61-11-23(c). Mr. Hall argues that his ten to twenty-five year sentence

---

[12] At oral argument, Mr. Hall's counsel acknowledged that his second argument was largely an extension of his first argument.

for sexually assaulting his eleven-year-old half-sister is disproportionate for many reasons, including that (1) he has diminished capacity and maturity; (2) the sentence is not an effective deterrent; and (3) he has less moral culpability. He further asserts that "extreme punishment" of mentally impaired individuals is disproportionate and cruel under the Eighth Amendment to the United States Constitution. He concludes by arguing that West Virginia's objective standard for disproportionality should be modified or reviewed for those with "reduced mental functioning by virtue of age or intellectual disability," although that standard currently considers "the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." Syl. pt. 5, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

Second-degree sexual assault has a fixed maximum set by statute, and Mr. Hall makes no assertion that he received a life recidivist sentence. *See* Syl. pt. 4, *Wanstreet, id. See also* W. Va. Code § 61-8B-4(b) (setting ten to twenty-five years imprisonment term for a violation of second-degree sexual assault). As the State points out, Mr. Hall alleges no facts that would allow this Court to review a sentence within statutory limits and where the sentencing court considered no impermissible factor. *See* Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982) ("Sentences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review."). While Mr. Hall cites numerous United States Supreme Court cases regarding

21

cruel and unusual punishment and disproportionate sentences, those cases concern either the imposition of the death penalty or lifetime incarceration without the possibility of parole for crimes committed while a juvenile.[13] None of these cases stand for the proposition that Mr. Hall's ten to twenty-five year sentence is disproportionate. We find his arguments unpersuasive and do not find that his sentence was unconstitutionally disproportionate.

---

[13] Mr. Hall cites the following cases regarding sentences: *Hall v. Florida*, 572 U.S. 701, 134 S. Ct. 1986, 188 L. Ed. 2d 1007 (2014) (addressing Florida's rule allowing the execution of a defendant with an IQ one point over 70); *Miller v. Alabama*, 567 U.S. 460, 489, 132 S. Ct. 2455, 2475, 183 L. Ed. 2d 407 (2012) ("By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment."); *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641, 171 L. Ed. 2d 525, *as modified* (Oct. 1, 2008), *opinion modified on denial of reh'g*, 554 U.S. 945, 129 S. Ct. 1, 171 L. Ed. 2d 932 (2008) (noting that the death penalty is not a proportional punishment for the rape of a child); *Roper v. Simmons*, 543 U.S. 551, 578, 125 S. Ct. 1183, 1200, 161 L. Ed. 2d 1 (2005) ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."); and *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) (holding that persons with intellectual disability may not be executed).

## IV.

## CONCLUSION

Finding no reversible error for the reasons stated above, we affirm the October 6, 2021 sentencing order of the Circuit Court of Mercer County.

Affirmed.